## APPOMATTOX RIVER WATER AUTHORITY, Petitioner,

v.

## FEDERAL ENERGY REGULATORY COMMISSION, Respondent.

Brasfield Development Ltd., Intervenor.

No. 83–1932.

United States Court of Appeals, Fourth Circuit.

Argued April 2, 1984.

Decided June 21, 1984.

McNiell Watkins, II, Washington, D.C. (Bishop, Liberman, Cook, Purcell & Reynolds, Washington, D.C., on brief), for petitioner.

Joel M. Cockrell, Washington, D.C. (Stephen R. Melton, Acting Gen. Counsel, Barbara J. Weller, Deputy Sol., Washington, D.C., on brief), for respondent.

Peter C. Lesch, Washington, D.C. (Gallagher, Boland, Meiburger & Brosnan, Washington, D.C., on brief), for intervenor Brasfield Development Ltd.

Before HALL, ERVIN, and CHAPMAN, Circuit Judges.

K.K. HALL, Circuit Judge:

Appomattox River Water Authority (the "Authority") petitions for review of an or-

der by the Federal Energy Regulatory Commission (the "FERC") issuing a preliminary permit to Brasfield Dam Development, Ltd. ("Brasfield"), and denying a permit to the Authority, for exploration of the development of hydroelectric power. We affirm.

I.

The George F. Brasfield Dam is located on the Appomattox River approximately five miles upstream of the City of Petersburg in Chesterfield County, Virginia. A reservoir, Lake Chesdin, is impounded by the dam to provide water ·for the area's residents and for recreation. Brasfield and the Authority filed competing applications for a preliminary permit to explore the development of hydroelectric power at the dam.

On October 27, 1980, Brasfield filed its application. Brasfield's proposed plan included: (1) use of the existing dam; (2) use of the existing reservoir; (3) construction of a proposed powerhouse with an estimated installed generating capacity of 4,500 kilowatts ("kw") and an estimated installed average annual energy output of 24,100 megawatt-hours ("mwh"); and (4) potential upgrading of approximately 2.5 miles of a low voltage transmission line to interconnect with a major transmission line of Virginia Electric Power Company (VEPCO). Brasfield proposed to sell the power produced at the facility to either the Authority or VEPCO.

More than three months later, on February 10, 1981, the Authority filed a competing, preliminary permit application. Its proposed plan included: (1) use of the existing dam; (2) use of the existing reservoir; (3) construction of a proposed powerhouse with an estimated installed generating capacity of 6,000 kw and an estimated annual average output of 21,000 mwh; and (4)

construction of a small power line to interconnect with VEPCO's line. The Authority proposed to utilize some of the power produced at the facility itself and to sell some of the power to VEPCO. The Authority's application, as second filed, also contained a statement of reasons why its plan was better adapted than the plan submitted by Brasfield, "to develop, conserve, and utilize in the public interest the water resources of the region." [1]

On August 26, 1981, the Director of the FERC's Office of Electric Power Regulation (the "Director"), issued a preliminary permit to Brasfield. The Director found that neither applicant had presented a plan for hydroelectric generation based on detailed studies and concluded that, at this early stage, there were no significant, substantiated differences in the two applications which would enable him to determine which plan was superior. Relying on the FERC's first-to-file regulation, 18 C.F.R. § 4.33(g)(2),[2] the Director denied the Authority's application.

The Authority appealed, contending: (1) that the FERC should prefer local ownership of and responsibility for the project over an absentee landlord; (2) that development by .the Authority was more feasible than development by Brasfield; and (3) that hydroelectric development by a party other than the Authority would conflict with the project's function as a water supply. The FERC held that the Authority's contentions were "unsubstantiated and at the permit stage not dispositive since permit proposals are speculative in nature." The FERC concluded that geographic distance from the proposed site was not a determining factor in evaluating permit proposals. The FERC further concluded that to base a best-adapted finding at the permit stage on alleged lower cost would be premature since the plans of both Brasfield and Appomattox were supported by

---

1. 16 U.S.C. § 800(a).

2.     If both of two applicants are either a municipality or a state, or neither of them is a municipality or a state, and the plans of the applicants are equally well adapted to develop, conserve, and utilize in the public interest

the water resources of the region, taking into consideration the ability of each applicant to carry out its plans, the Commission will favor the applicant whose application was first accepted for filing . . . .

only preliminary studies and estimates. The FERC, therefore, denied the appeal and affirmed the decision of the Director. The Authority petitions this Court for review.

## II.

On appeal, the Authority contends that the FERC erred in failing to evaluate and compare the merits of the two competing applications for preliminary permit and in awarding a permit to the first applicant to file. The Authority maintains that it was the superior applicant. First, the Authority argues that because it owns the dam and reservoir and has established a superior record of stewardship of the land and resources, it is singularly qualified to discharge the public interest responsibilities of licensees. Second, it argues that its development of the project would be economically superior to that proposed by Brasfield primarily because it will not incur any costs for the acquisition of the dam, reservoir, and lands underlying the project. Finally, the Authority argues that the FERC did not meaningfully compare the merits of the applications and that its reasons for refusing to evaluate the Authority's evidence are inadequate and irrelevant. We disagree.

The Federal Power Act, 16 U.S.C. §§ 791a *et seq.*, authorizes the FERC to regulate the development of hydroelectric power on United States land or on waters over which Congress has jurisdiction. The FERC exercises that authority by issuing licenses or granting exemptions from licensing for the construction and maintenance of the necessary facilities for such water development. *Id.* §§ 797(e); 823a; 2705(d).

The Act, as a predicate to the licensing process, authorizes the FERC to issue preliminary permits to enable prospective license applicants to gather data for submission of license applications and obtain necessary financial commitments. *Id.* § 797(f). FERC regulations require applicants for a preliminary permit to submit the following information: (1) a description of the proposed project; (2) a description of studies conducted or proposed to be conducted during the term of the preliminary permit; and (3) a statement of estimated costs and expected sources of financing. 18 C.F.R. § 4.81.

Where more than one person applies for a preliminary permit, the Act creates a mandatory preference for applications by states and municipalities and:

[A]s between other applicants, the Commission may give preference to the applicant the plans of which it finds and determines are best adapted to develop, conserve, and utilize in the public interest the water resources of the region, if it be satisfied as to the ability of the applicant to carry out such plans.

16 U.S.C. § 800(a). In all other cases, if the FERC finds the preliminary proposals equally well-adapted to efficient use of the water, the first filing party receives the permit. 18 C.F.R. § 4.33(g)(2). A preliminary permittee maintains priority of application for a license against potential rivals for the period of the permit, not to exceed three years, during which time the recipient may conduct the necessary examinations and surveys, prepare maps, plans, specifications, and estimates, and make financial arrangements. 16 U.S.C. § 798.

At the licensing stage, the FERC accepts and evaluates proposals from all interested parties. More detailed information is required of license applicants than permit applicants. 16 U.S.C. § 802; 18 C.F.R. §§ 4.40–.70. The licensee will not necessarily be the permittee; however, if license applicants' plans are equally well-adapted, the FERC will prefer the permittee. 16 U.S.C. §§ 798, 800; 18 C.F.R. § 4.33(h)(1).

The scope of our review of the FERC's action is narrow. This Court may set aside the FERC's order only if we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, 5 U.S.C. § 706(2)(A), or unsupported by substantial evidence, *id.* § 706(2)(E), 16 U.S.C. § 825*l*(b). *See also City of Dothan, Alabama v. FERC*, 684 F.2d 159, 164 (D.C. Cir.1982); *Delaware River Basin Commis-*

*sion v. FERC,* 680 F.2d 16, 18 (3d Cir.1982). There is no allegation that the FERC's first-in-time regulation is improper under the enabling statute. Instead, the Authority argues that the FERC failed to evaluate properly the plans of Brasfield and the Authority as a prelude to finding them adapted to the public interest objectives of the Act. We hold that substantial evidence supports the FERC's decision and that it did not act arbitrarily or capriciously in granting the preliminary permit to Brasfield as the applicant that filed first.

■ The plans of Brasfield and the Authority contained no significant differences and are, in fact, substantially identical. Although the plans differed slightly in the estimated number of generating units and capacity, the FERC has held that such differences are not dispositive at the permit stage in determining the best adapted plan, since the plans of all applicants are fluid.[3] The Authority does not contend that these project differences form a basis for finding its proposal better adapted than Brasfield's.

The Authority's contention that its proposal is superior to Brasfield's is instead grounded upon differences unrelated to the project itself. The Authority argues that it owns and operates the existing dam and reservoir. The Act does not create a preference for site-owner applicants.[4] In fact, after denying the Authority's appeal, the FERC expressly rejected similar arguments for ownership preference in *Franklin Falls Hydro Electric Corporation,* 24 FERC ¶ 61,348 (Sept. 26, 1983). The FERC held here, and has held previously, that geographic distance from the site is not a determining factor in evaluating a preliminary permit proposal. *John J. Hockberger,*

*Sr.,* 20 FERC ¶ 61,087 (July 23, 1982); *Town of New Roads, Louisiana,* 12 FERC ¶ 61,093 (July 31, 1980). As explained by the FERC in *Hockberger:*

> [A] preliminary permit's terms and conditions themselves recognize the fluidity of the permittee's plans and that any eventual application for a license may differ in important respects from the proposal set forth in the application for a preliminary permit. To determine how the project's structures could be best adapted requires the results of the detailed studies and agency consultation to be conducted under the permit. Because of the speculative nature of preliminary permit proposals, the Commission has not attached decisional significance to factors such as geographical distance from the site....

We find the FERC's approach to be rational. All other factors being equal, we can see no basis for making ownership or geographic proximity dispositive at the permit stage, when other, potentially offsetting considerations have not yet been studied or quantified.[5]

■ Finally, we conclude that the FERC's decision to defer a comparison of economic feasibility to the licensing stage is eminently rational. The Third Circuit recognized in *Delaware River Basin Commission v. FERC,* 680 F.2d 16 (3d Cir. 1982), that:

> To obtain a license [for development of a hydroelectric project], a prospective applicant must provide the Commission with a plethora of information, including feasibility studies, planned compliance with state laws and other relevant data. 16 U.S.C. § 802; 18 C.F.R. § 4.1 *et seq.* Compliance with statutory and regula-

---

**3.** *See, e.g., Seminole Electric Cooperative,* 9 FERC ¶ 61,245 (November 26, 1979).

**4.** Congress has considered, but has not enacted, an owner's preference. S. 2150, 98th Cong., 1st Sess., 129 Cong.Rec. No. 161 at S. 16985–86 (1983); S. 2500, 97th Cong., 2d Sess., 128 Cong. Rec. No. 53 at S. 4677–79 (1982).

**5.** Moreover, the FERC will impose conditions upon whoever is the permittee or licensee to

insure that hydroelectric projects are administered in a manner designed to protect the environment and the public interest. It does not follow that the Authority, by virtue of its ownership and operation of the dam and reservoir, should be adjudged better adapted than Brasfield at the preliminary permit stage. *See, e.g., Delaware River Commission v. FERC,* 680 F.2d 16, 18–19 (3d Cir.1982).

tory conditions takes time and money, and an applicant may not be willing to undertake these up-front expenses without some level of protection. To deal with that situation, the Act authorizes the Commission to issue preliminary permits "for the purpose of enabling applicants for a license ... to secure the data and to perform the acts required by section 802 of this title." 16 U.S.C. § 797(f).

*Id.* at 17. One of the primary studies undertaken by the permittee is determination of the economic feasibility of the project. Thus, we hold that the Authority's allegations of lower development costs will be more appropriately considered at the licensing stage than at the permit stage, after detailed studies have been completed.

Brasfield's preliminary permit simply entitles it to maintain priority of application for a license; that is, for the period of the preliminary permit, no party other than Brasfield may file a license application. Thereafter, the Authority is not precluded from filing a competing license application. At bottom, if the Authority demonstrates that its license proposal is best adapted to the objectives of the Act, it will receive the license. The Authority's contentions will be proper factors for consideration by the Commission at the licensing stage.

### III.

The Authority's remaining contentions lack merit. For the foregoing reasons, the decision of the FERC is affirmed.

AFFIRMED.