959 F.2d 508
 SUGARLOAF CITIZENS ASSOCIATION; Karen Kalla; J. Houston
Miller; Beverly Thoms; James Buchanan; Faye Buchanan;
Taylorstown Community Association, Incorporated; National
Trust for Historic Preservation in the United States, Petitioners,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Northeast Maryland Waste Disposal Authority; Montgomery
County, Maryland, Intervenors.
 No. 91-2905.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 29, 1991.
Decided March 13, 1992.
 
 Andrea Carol Ferster, Asst. Gen. Counsel, Nat. Trust for Historic Preservation in the U.S., Washington, D.C., argued (David A. Doheny, Vice President and General Counsel, Elizabeth S. Merritt, Associate General Counsel, Nat. Trust for Historic Preservation in the U.S., Ronald J. Wilson, Sierra Club Legal Defense Fund, on brief), for petitioners.
 Thomas J. Lane, F.E.R.C., Washington, D.C., argued (William S. Scherman, General Counsel, Jerome M. Feit, Sol., Joseph S. Davies, Deputy Sol., F.E.R.C., on brief), for respondent.
 
 
 1
 Mary Fisher Edgar, Piper & Marbury, Washington, D.C., argued (Toni K. Allen, Norman L. Rave, Jr., Piper & Marbury, Washington, D.C., Paul A. Tiburzi, Piper & Marbury, Baltimore, Md., on brief), for intervenor Northeast Maryland Waste Disposal Authority (Joyce R. Stern, County Atty., Diane R. Kamer, Associate County Atty., Montgomery County, Rockville, Md., on brief), for intervenor Montgomery County.
 
 
 2
 Before HALL and MURNAGHAN, Circuit Judges, and HARVEY, Senior United States District Judge for the District of Maryland, sitting by designation.
 
 OPINION
 ALEXANDER HARVEY, II, Senior District Judge:
 
 3
 This appeal seeks a review of Orders of the Federal Energy Regulatory Commission (the FERC). By Order dated November 1, 1990, the FERC granted the application of the Northeast Maryland Waste Disposal Authority (the "Authority") which sought certification of a resource recovery facility (the "Facility" or "Incinerator") as a qualifying small power production facility (qualifying facility or "QF") under § 210 of the Public Utility Regulatory Policies Act (PURPA), 16 U.S.C. § 824a-3. By Order dated January 24, 1991, the FERC denied rehearing.
 
 
 4
 As intervenors in the FERC certification proceedings,[1] Petitioners, the Sugarloaf Citizens Association, Karen Kalla, J. Houston Miller, Beverly Thoms, James and Faye Buchanan, the Taylorstown Community Association, and the National Trust for Historic Preservation, had requested that the FERC conduct a review of the environmental impact of the Facility under the National Environmental Policy Act ("NEPA") and also of the impact of the Facility on historic structures under the National Historic Preservation Act ("NHPA"). The FERC denied these requests in its Order of November 1, 1990, ruling that certification under PURPA was neither a "major Federal action," triggering review under NEPA, nor a federal "undertaking," triggering review under NHPA. Petitioners subsequently filed a petition for a rehearing, which was also denied.
 
 
 5
 Concluding that the agency determinations were reasonable under all the circumstances, we affirm the Orders of the FERC.
 
 
 6
 * In order to address its solid waste disposal problems, Montgomery County planned the construction of a waste-to-energy facility which would preserve resources by producing energy without consuming natural resources. The County decided to locate the Facility in Dickerson, Maryland, adjacent to an existing generating station operated by Potomac Electric Power Company ("PEPCO"). To help defray the cost of waste disposal, the Facility was designed to utilize the heat produced by incinerating waste to generate electricity which would be sold to PEPCO.
 
 
 7
 The Facility was to be owned and operated by the Authority. The Authority is an independent state agency created by the Maryland General Assembly in 1980 to assist jurisdictions like Montgomery County in the development of adequate waste disposal facilities, including those that provide for energy generation and resource recovery. The Facility was to be constructed and operated by the Authority in cooperation with the County.
 
 
 8
 Petitioners assert that Dickerson, Maryland, the planned location of the Incinerator, is an environmentally sensitive and historically unique region. The 35-acre site near Dickerson lies in Montgomery County's Agricultural Preserve, which includes the Sugarloaf Mountain Historic District. Sugarloaf Mountain is a registered National Natural Landmark. In asking the FERC to review the application under NEPA and NHPA, Petitioners expressed concerns that the Incinerator, in conjunction with the existing generating station operated by PEPCO, would severely impact upon the historical, cultural, and recreational resources in the area. They press those arguments here.
 
 II
 
 9
 PURPA was enacted by Congress in 1978 for the purpose of encouraging the development of cogeneration facilities[2] and small power production facilities. To encourage this development, PURPA confers certain benefits on this type of facility. 16 U.S.C. § 824a-3. Qualifying facilities are exempt from most federal and state regulation of electric utilities. Moreover, a utility like PEPCO must provide electricity to such a facility and buy from such a facility electricity generated, at reasonable rates not to exceed "the incremental cost to the electric utility of alternative electric energy," pursuant to rules determined to be necessary by the FERC for the encouragement of cogeneration and small power production. 16 U.S.C. § 824a-3(b).
 
 
 10
 To achieve status as a "qualifying facility" and thereby receive PURPA benefits, a cogeneration or small power production facility cannot be owned by a person "primarily engaged in the generation or sale of electric power (other than electric power solely from cogeneration facilities or small power production facilities)" and the facility must meet "such [other] requirements ... as the Commission may, by rule, prescribe." 16 U.S.C. §§ 796(17)(C) and (18)(B). The FERC has adopted extensive rules pursuant to this Congressional directive. See 18 C.F.R. § 292.203 through § 292.206 (1990). These rules detail the size and ownership restrictions set forth in PURPA and contain technical requirements concerning the types of fuel that may be used for a small power production facility. 18 C.F.R. § 292.204 (1990). Specifically, any facility that (1) has a power production capacity of less than 80 megawatts, (2) obtains 75 percent or more of its energy input from biomass, waste or renewable or geothermal resources, and (3) is not more than 50 percent owned by one or more electric utilities or electric utility holding companies is a qualified small power producer. 18 C.F.R. §§ 292.204, 292.206 (1990).
 
 
 11
 So that the proposed Facility might qualify for benefits under PURPA, the Authority and PEPCO agreed by contract that the Authority would apply to the FERC for certification as a qualified small power producer. Certification is an optional procedure permitted by FERC regulations, whereby, upon application, the FERC will issue a certificate stating that a facility meets the criteria set forth in the regulations for a qualified small power producer. 18 C.F.R. § 292.207(b). However, the FERC regulations permit a facility to choose to by-pass the procedure for certification by the FERC and instead opt for self-certification. 18 C.F.R. § 292.207(a)(1). The regulations state that "[a] small power production facility which meets the criteria for qualification set forth in § 292.203 is a qualifying facility." Id. (Emphasis added).
 
 
 12
 On July 25, 1990, the Authority filed an application with the FERC setting forth grounds demonstrating that the Facility would meet the size, fuel use and ownership criteria for certification. Petitioners intervened on August 27, 1990, claiming that PURPA certification is subject to the requirements of NEPA, 42 U.S.C. §§ 4321 et seq., and also to the requirements of NHPA, 16 U.S.C. §§ 470 et seq. The County intervened in support of the application. Petitioners argued that, under NEPA and NHPA, the FERC was required before granting the requested certification to conduct detailed evaluations of the Facility's potential impact on the environment and also its potential effect on historic sites. In its Order of November 1, 1990, the FERC granted certification to the Facility, ruling that certification under PURPA is neither a "major Federal action" which would trigger the review requirements of NEPA nor a federal "undertaking" which would trigger those of NHPA. After their motion for rehearing was denied, Petitioners appealed and have now asked this Court to review the FERC's determinations. The FERC has opposed the petition for review, and has been joined in this appeal by the County and the Authority as Intervenors.
 
 III
 
 13
 This Court has jurisdiction to review orders of the FERC under Section 313(b) of the Federal Power Act (FPA), 16 U.S.C. § 825l(b). Section 313(b) of the FPA provides that "the findings of the Commission as to the facts, if supported by substantial evidence, shall be conclusive." Thus, this Court may set aside FERC's Orders only if we conclude that they are unsupported by substantial evidence. Appomattox River Water Authority v. F.E.R.C., 736 F.2d 1000, 1002 (4th Cir.1984). The parties dispute the standard to be applied to an agency determination that its action is not a "major Federal action." However, the cases cited by both sides indicate that when an agency makes the threshold determination that its actions do not constitute a "major Federal action," the question concerning the applicability of NEPA is reviewed for reasonableness under the circumstances. (Emphasis added). Goos v. ICC, 911 F.2d 1283, 1291-92 (8th Cir.1990) (citing Minnesota Pub. Interest Research Group v. Butz, 498 F.2d 1314 (8th Cir.1974), and Winnebago Tribe v. Ray, 621 F.2d 269 (8th Cir.) cert. denied, 449 U.S. 836, 101 S.Ct. 110, 66 L.Ed.2d 43 (1980)). We apply that standard here.
 
 IV
 
 14
 Under NEPA, an agency must include an environmental impact statement (EIS) in "every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). Only proposals for a "major" federal action therefore require review by an agency under NEPA. "Requiring an EIS for anything less would needlessly hinder the Government's ability to carry on its myriad programs and responsibilities in which it assists, informs, monitors, and reacts to activities of individuals, organizations, and states, but in which the Government plays an insubstantial role." NAACP v. Medical Center, Inc., 584 F.2d 619, 634 (3d Cir.1978).
 
 
 15
 NEPA thus "focuses on activities of the federal government and does not require federal review of 'the environmental consequences of private decisions or actions, or those of state or local governments.' " Goos, supra, 911 F.2d at 1293 (citations omitted). Regulations of the Council on Environmental Quality (CEQ)[3] provide that "major Federal actions" include non-federal actions "with effects that may be major and which are potentially subject to Federal control and responsibility." 40 C.F.R. § 1508.18. "Projects include actions approved by permit or other regulatory decision as well as federal and federally assisted activities." 40 C.F.R. § 1508.18(b)(4). This Court has explained that "a non-federal project is considered a 'federal action' if it cannot 'begin or continue without prior approval by a federal agency' [citations omitted]" and the agency possesses authority "to exercise discretion over the outcome." Maryland Conservation Council, Inc. v. Gilchrist, 808 F.2d 1039, 1042 (4th Cir.1986), citing W. Rodgers, Environmental Law § 7.6, at 763 (1977). As stated by the Tenth Circuit, "the federal agency must possess actual power to control the non-federal activity." Sierra Club v. Hodel, 848 F.2d 1068, 1089 (10th Cir.1988).
 
 
 16
 Petitioners advance several related arguments in support of their contention that certification of the Incinerator by the FERC is a "Major Federal action." Petitioners argue that "but for" the FERC certification the Incinerator project could not go forward under the existing agreement. In sum, Petitioners contend that the FERC's certification is essentially a contractual prerequisite in this case to PEPCO's obligations to the Authority, and that such certification renders the project economically viable with a guaranteed buyer and tax-exempt financing.
 
 
 17
 In its Order of November 1, 1990, the FERC held that its certification of this project was merely a ministerial act in which the agency exercised no discretion. Respondent and the Intervenors argue here that if the project meets the size, fuel, and ownership requirements, the FERC has no choice but to grant certification. The FERC further asserts that the certification process does not grant it control over the construction or operation of the Incinerator.
 
 
 18
 Although no other court has decided the precise issue presented in this case, we note that the FERC itself has held that certification of a qualifying facility under PURPA is merely a ministerial act which presents no opportunity for consideration of any environmental impact. See Virginia Turbo Power Sys.--II, L.P., 51 Fed. Energy Reg. Comm'n Rep. (CCH) p 61,079 (April 26, 1990), reh'g denied, 51 Fed. Energy Reg. Comm'n Rep. (CCH) p 61,356 (June 25, 1990), appeal dismissed sub nom. Andrews v. F.E.R.C., No. 90-3127 (4th Cir.1990). We conclude that the position taken by the FERC in these rulings and in this case is well supported by analogous authority. Other Circuits have held that when an agency has no discretion to consider environmental values implementing a statutory requirement, its actions are ministerial and not subject to NEPA. See Goos, supra, 911 F.2d 1283 (8th Cir.1990) (since the ICC had no discretion to consider environmental factors in deciding whether to issue a Notice of Interim Trail Use, its actions were ministerial and NEPA did not apply); South Dakota v. Andrus, 614 F.2d 1190 (8th Cir.), cert. denied, 449 U.S. 822, 101 S.Ct. 80, 66 L.Ed.2d 24 (1980) (since Department of the Interior had no discretion to consider environmental factors in issuing a mineral patent, it was a ministerial act and not subject to NEPA); Atlanta Coalition on Transp. Crisis, Inc. v. Atlanta Regional Comm'n, 599 F.2d 1333 (5th Cir.1979) (because the Secretary of Transportation had no discretion in ratifying planning procedures and allocating funding, NEPA did not apply); NAACP v. Medical Center, Inc., 584 F.2d 619 (3d Cir.1978) (because the Department of HEW had no discretion to reject capital expenditures plan under the Social Security Act, its approval of the plan was a ministerial act and NEPA did not apply).
 
 
 19
 Petitioners assert that all of the above cases involved situations in which the agency's authority to consider environmental factors was statutorily limited by Congress. The provision of PURPA applicable here provides that a QF is a facility "which the Commission determines, by rule, meets such requirements (including requirements respecting fuel use, fuel efficiency, and reliability) as the Commission may, by rule, prescribe...." 16 U.S.C. § 796(17)(C). In prescribing rules for QF certification, the FERC did not include consideration of environmental factors among the requirements, but rather established a set of objective criteria relating to fuel use, size and ownership. 18 C.F.R. §§ 292.203, 292.204, 292.206 (1990). It is thus apparent that a facility which meets these established criteria is automatically eligible for benefits under PURPA. 18 C.F.R. § 292.207(a)(1). Indeed, pursuant to the FERC regulations, the Facility was not even required to apply to the agency for certification but could have opted for selfcertification. Id. Accordingly, we conclude that the FERC does not have discretion to deny certification to any facility which meets the enumerated criteria and that its certification of this project was therefore merely a ministerial act.
 
 
 20
 It is further apparent that the FERC does not have sufficient control over the Incinerator project to federalize it. The Tenth Circuit has held that for a major Federal action to exist "the federal agency must possess actual power to control the nonfederal activity." Hodel, supra, 848 F.2d at 1089. In this particular case, the Authority could have lawfully disregarded PURPA criteria for certification and could have constructed the Facility in the absence of the FERC certification, in which event it would not have received PURPA benefits. The only action taken by the FERC in this case was its factual determination that this proposed Facility met the limited technical and ownership qualifications established by PURPA. More agency control than that which existed here is necessary before a project may be considered to be federalized for purposes of NEPA. See Maryland Conservation Council, Inc. v. Gilchrist, supra (NEPA requirements were triggered because federal approval was required before a county highway could be constructed through a park; agencies were required to consider environmental factors in their decision and had discretion whether or not to approve the construction of the road or to compel an alternative route); Sierra Club v. Hodel, supra (NEPA requirements were triggered because the agency had a statutory obligation to prevent unnecessary degradation of wilderness areas from the construction of a highway and the authority to require use of an alternative route).
 
 
 21
 Petitioners' argument that this project was federalized because it would not be accomplished "but for" the FERC certification does not withstand scrutiny. The only case cited by Petitioners that contains any language suggesting a "but for" test is Natural Resources Defense Council, Inc. v. Hodel, 435 F.Supp. 590, 599 (D.Or.1977), aff'd, 626 F.2d 134 (9th Cir.1980). There the District Court stated "that an essentially private project is 'federalized' for purposes of NEPA when federal action has enabled the project to come to fruition." Id. at 599. In determining that the project, a long-range cooperative plan to meet the electrical power needs of the Pacific Northwest, was a "major Federal action" requiring preparation of an EIS, the Court relied on the fact that "federal investment in the [project was] in the billions of dollars." Id. at 598. Furthermore, "[w]ithout federal peaking power and transmission systems and the services performed by [the federal agency], construction of these plants would be inconceivable in the absence of very substantial change." Id. at 599.
 
 
 22
 Petitioners attempt to analogize the circumstances here to cases in which the federal agency exercises financial control over the project. See Ely v. Velde (Ely II), 497 F.2d 252 (4th Cir.1974) (LEAA grant to nonfederal entity to build local prison subject to NEPA and NHPA); Proetta v. Dent, 484 F.2d 1146 (2d Cir.1973) (plant expansion by private corporation financed with federal loans is subject to NEPA). However, in this case, the FERC does little more than regulate the rates paid by utilities to the qualifying facility and does not control the financing, construction or operation of the project. Although the Facility receives an economic benefit, no direct federal funding or other substantial federal assistance is provided, and no licensing action is involved.
 
 
 23
 Other arguments advanced by Petitioners are likewise without merit. We hold that the FERC's determination that certification of the Facility was not a "major Federal action" under NEPA was reasonable under all the circumstances.
 
 V
 
 24
 Section 106 of the NHPA requires a federal agency to engage in a review process to take into account effects on historic properties when it becomes involved in a federal "undertaking." Specifically, Section 106 provides:
 
 
 25
 The head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State and the head of any Federal department or independent agency having authority to license any undertaking shall, prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license, as the case may be, take into account the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register.
 
 
 26
 16 U.S.C. § 470f. Regulations of the Advisory Council on Historic Preservation[4] define an "undertaking" as a "project, activity, or program [that] must be under the direct or indirect jurisdiction of a Federal agency or licensed or assisted by a Federal agency." 36 C.F.R. § 800.2(o).
 
 
 27
 Just as the FERC certification of this Facility is not a "major Federal action" under NEPA, so too such certification is not a federal "undertaking" under NHPA. The standard for triggering NHPA requirements is similar to that for the triggering of NEPA requirements. Village of Los Ranchos de Albuquerque v. Barnhart, 906 F.2d 1477, 1484 (10th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991).
 
 
 28
 As various courts have explained, NHPA, "by its terms, has a narrow reach and is triggered only if a federal agency has the authority to license a project or approve expenditures for it." Lee v. Thornburgh, 877 F.2d 1053, 1055 (D.C.Cir.1989); see also Edwards v. First Bank of Dundee, 534 F.2d 1242, 1245-46 (7th Cir.1976) (demolition of a privately owned building by a bank did not involve NEPA or NHPA where the activity was not federally funded and did not require a federal permit even though the bank was under the jurisdiction of the Comptroller of the Treasury); Ringsred v. Duluth, 828 F.2d 1305, 1309 (8th Cir.1987) (review and approval by Secretary of Interior of contracts for private construction of a parking ramp did not involve NEPA or NHPA because the Secretary had no legal or factual control over the ramp); Techworld Dev. Corp. v. D.C. Preservation League, 648 F.Supp. 106, 120 (D.D.C.1986) (in order for a local project to be transformed into a federal "undertaking" under the NHPA, the "federal agency must be substantially involved in the local project, either with its initiation, its funding, or its authorization"). Under the circumstances here, we agree with the FERC finding that its certification of this Facility was not a federal "undertaking," and we accordingly conclude that its determination that NHPA was inapplicable was reasonable.
 
 VI
 
 29
 For the above reasons, we affirm the Orders of the FERC in all respects. The FERC's determination that certification of the Incinerator was neither a "major Federal action" nor a federal "undertaking" was reasonable under all the circumstances.
 
 
 30
 AFFIRMED.
 
 
 
 [1]
 Montgomery County, Maryland ("Montgomery County") also intervened in the proceedings and supported the Authority's application
 
 
 [2]
 A "cogeneration facility" is one that generates electricity from steam or other forms of energy used for industrial, commercial, heating, or cooling purposes. 16 U.S.C. § 796(18)(A); 18 C.F.R. § 292.202(c)
 
 
 [3]
 The CEQ is a federal executive agency created by NEPA. 42 U.S.C. § 4342. CEQ regulations implementing NEPA, 40 C.F.R. Part 1500, are binding on all federal agencies, and CEQ's interpretation of NEPA is entitled to substantial deference. Andrus v. Sierra Club, 442 U.S. 347, 357-58, 99 S.Ct. 2335, 2340-41, 60 L.Ed.2d 943 (1979)
 
 
 [4]
 The Advisory Council on Historic Preservation was established by § 201 of NHPA, 16 U.S.C. § 470i. Section 211 of NHPA provides that "[t]he Council is authorized to promulgate such rules and regulations as it deems necessary to govern the implementation of section 470f of [NHPA]." 16 U.S.C. § 470s