**RESTORE: THE NORTH WOODS, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE; Dan Glickman, Secretary, United States Department of Agriculture; Mike Dombeck, Chief, USDA Forest Service; Bob Jacobs, Regional Forester, Eastern Region, USDA Forest Service; James W. Bartelme, Forest Supervisor, Green Mountain National Forest; Beth LeClair, District Ranger, Rochester Ranger District, Green Mountain National Forest; in their official capacities as officers or employees of the United States Department of Agriculture; Defendants.**

**File No. 97 CV 163.**

United States District Court, D. Vermont.

June 17, 1997.

Cindy Ellen Hill, Middlebury, VT, for Plaintiff.

Joseph Robert Perella, Asst. U.S. Atty., Office of U.S. Attorney, Dist. of Vermont, Burlington, VT, for Defendants.

Carolyn Browne Anderson, Peter Welles Hall, Reiber, Kenlan, Schwiebert, Hall & Facey, P.C., Rutland, VT, for Movant.

*OPINION AND ORDER*

SESSIONS, District Judge.

Plaintiff, RESTORE: The North Woods, ("RESTORE"), filed this action on May 20, 1997, seeking declaratory and injunctive relief requiring the Federal Defendants to comply with the National Environmental Policy Act ("NEPA") by assessing the environmental impacts of a proposed land exchange between the United States Forest Service and Sugarbush Resort Holdings, Inc. ("SRHI"), and to prohibit the exchange of deeds until the environmental impacts are assessed.

RESTORE filed motions for a Temporary Restraining Order, for Preliminary Injunction, and for Summary Judgment on the seven counts of its complaint (Papers 2, 3, 5). The Federal Defendants filed a cross-motion for Summary Judgment (Paper 8). SRHI, having been granted permission to intervene, also filed a cross-motion for Summary Judgment (Paper 11). The Court heard oral argument on May 29, 1997. For the reasons stated below, RESTORE's motion is granted and Defendants' and SRHI's motions are denied.

I. *Factual Background*

SRHI operates Sugarbush Resort, a major ski resort located on Mount Ellen and Lincoln Peak in the towns of Warren and Fayston, Vermont. National Forest System land in the Green Mountain National Forest is used by the resort. SRHI is authorized to use National Forest System lands under a 40–year Special Use Permit issued May 17, 1995.

In late 1995, SRHI and the United States Forest Service began discussing the acquisition by SRHI of a 57 acre parcel of National Forest land adjoining its current holdings. SRHI intends to build a hotel/conference center and paved parking lot on the proper-

ty, which currently consists of an unpaved parking lot, tennis courts and woods. This expansion is part of SRHI's plan to remain competitive as a four-season destination resort.

SRHI initially offered to swap 800 acres of SRHI land and 176 acres of land in Bennington, Vermont in exchange for the 57 acre parcel. The Forest Service, following regulations governing land exchanges between it and non-Federal parties, undertook to assess the environmental effects of the proposed action in accordance with NEPA. The proposal was released for public comment via a "scoping letter," on January 25, 1996. In response, the Regional Administrator of the Environmental Protection Agency ("EPA") urged the Forest Service to conduct an environmental analysis, "as the development of a destination resort and hotel conference complex by SRHI appears to be reasonably foreseeable and could have substantial impact on the environment." DeVillars letter (Paper 8, Att. 13).

On March 13, 1996, the Forest Service issued a "Decision Letter" disapproving the exchange, based at least in part on comment received from the local community, but noting that SRHI and the Forest Service would continue to work together to develop an acceptable exchange.

SRHI then began working with the Vermont Congressional delegation for the passage of specific legislation that would direct the Forest Service to convey its parcel to SRHI, and allow any excess funds received from the conveyance to be placed in escrow for the acquisition of additional lands to be incorporated into the Green Mountain National Forest. That effort culminated in the Sugarbush Land Exchange Act of 1996 ("SLEA"), attached to the 1997 Appropriations Bill and signed into law on September 30, 1996. The SLEA provides for the exchange of the 57 acre parcel for acceptable land and/or cash, and permits escrow of ex-

cess funds, if any. Sugarbush Land Exchange Act of 1996, Pub.L. No. 104–208, § 326, 110 Stat. 3009 (1996).

SRHI and the Forest Service developed a second exchange proposal during the summer of 1996. The second proposal contemplated exchanging the 57 acre National Forest parcel for 77 acres of land in private hands known as the Warren Falls parcel, on which SRHI had obtained an Option to Purchase, plus approximately 59 acres near Lincoln Gap, and 213 acres on the slopes of Lincoln Peak. The Warren Falls parcel is a tract of scenic land along the Mad River. The 59 acre parcel is undeveloped forest near the Breadloaf Wilderness Area, and the 213 acre parcel is associated with the operation of the ski resort. (Paper 8, Att. 4 at 9, 13).

In October, 1996, the Forest Service initiated another round of scoping, and received additional comments. On April 7, 1997, the Forest Service issued its decision to approve the land exchange. In approving the land exchange, the Forest Service concluded that the proposed action may be "categorically excluded" from complying with the preparation of an Environmental Impact Statement under NEPA.[1]

Simultaneously with its decision to exclude the land exchange from environmental review, the Forest Service issued an Environmental Assessment for the Upgrade and Realignment of the Village Double Chair and Management Area Designations for the Newly Acquired Lands through the Sugarbush Land Exchange Project ("Management Area Designation EA" or "EA"). This EA, in proposing land management designations for lands it would shortly acquire from SRHI, discussed some of the environmental implications of the transfer of the 57 acre parcel to SRHI, but did not directly address the issues raised.

On May 16, 1997 the Forest Service made a further determination that the conveyance

---

1. Under Forest Service regulations a proposed action may be categorically excluded from documentation in an Environmental Impact Statement ("EIS") or Environmental Assessment ("EA") if the proposed action normally does not have a significant effect on the quality of the human environment, unless "scoping" has indi-

cated either the presence of extraordinary circumstances, or that the proposed action may in fact have a significant effect on the environment. Forest Service Environmental Policy and Procedures Handbook ("FSH 1909.15") §§ 30.3, 31.1b, (Paper 8, Att. 5).

of the 57 acres was a non-discretionary agency action pursuant to the SLEA, and as such was exempt from the requirements of NEPA. (Paper 8, Att. 3). In effect, the Forest Service concluded that the limited environmental review it had conducted so far had been unnecessary.

SRHI and the Forest Service planned to complete the land exchange on May 22, 1997. They voluntarily postponed the closings until May 30, 1997, because of the pending litigation. SRHI's Option to Purchase the Warren Falls parcel expired June 1, 1997.

RESTORE's complaint asserts that the Forest Service failed to comply with NEPA's requirement of environmental review (Counts 1, 2); failed to comply with Council of Environmental Quality ("CEQ") and Forest Service regulations concerning categorical exclusions (Count 3); conducted segmented review of a proposed action in violation of NEPA (Count 4); failed to consider irreversible and irretrievable commitment of resources in violation of NEPA (Count 5); violated Forest Service regulations governing the exchange of land (Count 6); and alleged that the Forest Service's regulations concerning categorical exclusions violate NEPA (Count 7).

The parties' summary judgment motions have narrowed the issues to two dispositive questions of law: one, whether the proposed land exchange is exempt from NEPA because the exchange is mandatory under the SLEA; and two, if NEPA applies, whether the Forest Service's decision to categorically exclude the proposed land exchange was arbitrary and capricious.

## II. Standards

A district court is empowered to review agency action under the Administrative Procedure Act. 5 U.S.C. § 702 (1996). The reviewing court must set aside agency action, findings, and conclusions if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1996).

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986), citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970).

## III. Discussion

■ NEPA requires federal agencies, including the Forest Service, to review the environmental impact of major federal actions significantly affecting the quality of the human environment.[2] 42 U.S.C. § 4332(2)(C) (1994). The Supreme Court has stated that NEPA has twin aims. "First it places upon an agency the obligation to consider every significant aspect of the environmental impact of a proposed action. Second, it ensures that the agency will inform the public that it has indeed considered environmental concerns in its decision making process." *Baltimore Gas & Elec. Co. v. Natural Resources Defense Council*, 462 U.S. 87, 97, 103 S.Ct. 2246, 2252, 76 L.Ed.2d 437 (1983) (citations and interior quotation marks omitted).

The Second Circuit admonished, in an early case construing NEPA, that in enacting NEPA Congress directed that agencies implement it to the fullest extent possible. 42 U.S.C. § 4332. "In using this language, it was not creating a loophole to avoid compliance, but rather was stating that NEPA must be followed unless some existing law applicable to the agency made compliance impossible." *Monroe County Conservation Council, Inc. v. Volpe*, 472 F.2d 693, 699 (2d Cir.1972) (referring to the legislative history

**2.** A major federal action includes an action with effects that may be major and which is potentially subject to Federal control and responsibility, such as approval of a specific project, whether by permit or other regulatory decision. 40 C.F.R. § 1508.18 (1997). A major federal action may encompass action by non-federal actors if the federal agency has the authority to influence significant non-federal activity. *Sierra Club v. Hodel*, 848 F.2d 1068, 1089 (10th Cir.1988).

of the phrase "to the fullest extent possible" in 42 U.S.C. § 4332). *See also Limerick Ecology Action, Inc. v. United States Nuclear Regulatory Comm'n,* 869 F.2d 719, 729 (3d Cir.1989); *Public Serv. Co. v. United States Nuclear Regulatory Comm'n,* 582 F.2d 77, 81 (1st Cir.1978) (unless specific statutory provision necessarily collided with NEPA, agency had a duty to consider, and, to the extent within its authority, minimize environmental damage); 40 C.F.R. § 1500.6 ("to the fullest extent possible" means that compliance with the section is mandatory unless existing law applicable to the agency's operations expressly prohibits or makes compliance impossible).

The Supreme Court stressed that "to the fullest extent possible" was neither accidental nor hyperbolic, but "a deliberate command that the duty NEPA imposes upon the agencies to consider environmental factors not be shunted aside in the bureaucratic shuffle." *Flint Ridge Development Co. v. Scenic Rivers Ass'n,* 426 U.S. 776, 787, 96 S.Ct. 2430, 2438, 49 L.Ed.2d 205 (1976).

■ In *Flint Ridge,* the Supreme Court held NEPA's environmental impact statement requirement inapplicable, where there was a clear and fundamental conflict of statutory duty between NEPA and a statute which imposed strict and short time limits on agency action, and afforded the Secretary no discretion to suspend the time limits. Even where the agency action would constitute a major federal action ordinarily requiring NEPA analysis, where an agency cannot comply with NEPA and with another statutory duty, NEPA must yield. *Flint Ridge,* 426 U.S. at 791, 96 S.Ct. at 2439–40.

*Flint Ridge* left open the issue of whether an agency action is a major federal action for NEPA purposes when the agency lacks any discretion to take environmental consequences into consideration. *Id.* at 786–87, 96 S.Ct. at 2437. Some courts have proceeded to hold that where an agency action is purely ministerial and non-discretionary, NEPA does not apply because the action is not a major federal action. *See Sugarloaf Citizens Ass'n v. F.E.R.C.,* 959 F.2d 508 (4th Cir.1992) (F.E.R.C. certification of small power facility for PURPA purposes purely ministerial and

not a major federal action); *Goos v. I.C.C.,* 911 F.2d 1283 (8th Cir.1990) (I.C.C. issuance of Notice of Interim Trail Use not a major federal action because Secretary had no discretion to refuse to issue notice if statutory requirements were met); *National Ass'n for the Advancement of Colored People v. Medical Ctr., Inc.,* 584 F.2d 619 (3d Cir.1978) (H.E.W.'s ministerial approval of capital expenditures plan under Social Security Act not major federal action).

NEPA's requirements, moreover, are applicable to proposed federal agency actions. 42 U.S.C. § 4332(2)(C); *see, e.g., Monroe County Conservation Council,* 472 F.2d at 697 (primary purpose of impact statement is to compel federal agencies to weigh environmental factors in making discretionary choices); *Minnesota v. Block,* 660 F.2d 1240 (8th Cir.1981) (for an EIS to be required, some future federal action, on which an EIS may have some effect, must be anticipated). A proposal exists at the stage in the development of an action when an agency has a goal and is actively preparing to make a decision on one or more alternative means of accomplishing that goal, and the effects can be meaningfully evaluated. 40 C.F.R. § 1508.23 (1997).

### A. *Exemption from the requirements of NEPA*

■ The Forest Supervisor made a determination that the land exchange was not a discretionary act, and therefore the agency was not required to comply with NEPA. (Paper 8, Att. 3). An agency's threshold determination that an impact statement is not required under NEPA is reviewed under the "arbitrary, capricious, abuse of discretion standard." *Hanly v. Kleindienst,* 471 F.2d 823, 830 (2d Cir.1972).

Under *Flint Ridge,* if the SLEA expressly prohibits environmental review under NEPA, or makes compliance with NEPA impossible, then the Forest Service is not required to conduct the review.

The SLEA provides in pertinent part:

If Sugarbush Resort Holdings, Inc. conveys to the United States land acceptable

to the Secretary of Agriculture that is at least equal in value to the value of the land described in subsection (a)(2), makes a payment of cash at least equal to that value, or conveys land and makes a payment of cash that in combination are at least equal to that value, the Secretary, subject to valid existing rights, shall, under such terms and conditions as the Secretary may prescribe, convey all right, title, and interest of the United States in and to the land described in subsection (a)(2).

Pub.L. No. 104–208, § 326, 110 Stat. 3009 (1996).[3]

The SLEA did not expressly exempt the proposed land exchange from the requirements of NEPA. If, however, the SLEA made compliance with NEPA impossible, or created a clear and fundamental conflict of statutory duty, the Forest Service is exempted from compliance with NEPA under *Flint Ridge.*

The Forest Service contends that the SLEA deprives it of any discretion with regard to the proposed land exchange, because it must convey all right, title, and interest in the parcel once SRHI conveys land and/or cash that is equal in value to the 57 acre parcel. Because its action in transferring the land will be non-discretionary and purely ministerial, it argues, NEPA does not apply. The Forest Service further maintains that it cannot comply with NEPA because the decision to transfer the land to SRHI has already been made, by Congress. Notably, the Forest Service does not suggest that the proposed land exchange is not a major federal action. *See* 36 C.F.R. § 254.3(g) (1997) (agreement to initiate land exchange between Federal and non-Federal parties triggers environmental analysis in accordance with NEPA).

RESTORE argues that the plain language of the statute confers discretion upon the Forest Service in the land exchange process.

The language of the statute indicates that Congress has limited, but not eliminated, the Secretary's discretion in this land exchange. First, the statute provides that the land SRHI conveys to the United States must be "acceptable" to the Secretary of Agriculture. If the land is not "acceptable," the Secretary need not proceed with the exchange. Second, the Secretary may prescribe "terms and

---

**3.** The SLEA provides in its entirety:

(a) Exchange or sale of land.—

(1) If Sugarbush Resort Holdings, Inc. conveys to the United States land acceptable to the Secretary of Agriculture that is at least equal in value to the value of the land described in subsection (a)(2), makes a payment of cash at least equal to that value, or conveys land and makes a payment of cash that in combination are at least equal to that value, the Secretary, subject to valid existing rights, shall, under such terms and conditions as the Secretary may prescribe, convey all right, title, and interest of the United States in and to the land described in subsection (a)(2).

(2) Federal land to be exchanged.—The Federal land to be exchanged is approximately 57 acres of federally owned land in the Green Mountain National Forest depicted on the map entitled "Green Mountain National Forest, Sugarbush Exchange," dated December 1995.

(3) Lands acquired from Sugarbush Resort Holdings, Inc.—Any land conveyed to the United States in an exchange under subsection (a)(1) shall be subject to such valid existing rights of record as may be acceptable to the Secretary, and the title to the parcel shall conform with the title approval standards applicable to federal land acquisitions.

(b) Administration of land.—

(1) Addition to green mountain national forest.—On approval and acceptance of title by the Secretary, the land acquired by the United States through an exchange or with proceeds from a sale under subsection (a) shall become part of the Green Mountain National Forest, and the boundaries of the National Forest shall be adjusted to include the land.

(2) Administration.—Land acquired under this Act shall be administered by the Secretary in accordance with the laws (including regulations) pertaining to the National Forest System.

(3) Authority of the secretary.—This section does not limit the authority of the Secretary to adjust the boundaries of the Green Mountain National Forest pursuant to section 11 of the Act of March 1, 1911 (36 Stat. 963, chapter 186; 16 U.S.C. 521) (commonly known as the "Weeks Law").

(4) For the purposes of section 7 of the Land and Water Conservation Fund Act of 1965 (16 U.S.C. 4601–9), the boundaries of the Green Mountain National Forest as adjusted under this Act, shall be considered to be the boundaries of the Green Mountain National Forest as of January 1, 1965.

Pub.L. No. 104–208, § 326, 110 Stat. 3009 (1996).

conditions" in its conveyance of the land.[4]

To be sure, if the land is acceptable, and if SRHI transfers land and/or cash equal in value, Congress has directed that the Secretary "shall ... convey all right, title, and interest of the United States in and to the land." The Forest Service does lack the discretion to convey less than all right, title, and interest, or to refuse to make the exchange if all the conditions are met. But it does not lack all discretion in the process, its actions are not purely ministerial, nor will compliance with NEPA be an empty formality.[5]

The SLEA does not preclude NEPA analysis of the terms and conditions which may be imposed upon the parcel which is exchanged out of the National Forest System. The regulations governing land exchanges between the Forest Service and non-Federal parties expressly provide for the imposition of restrictions on the use of Federal lands to be exchanged. 36 C.F.R. § 254.3(h) (1997). Congress, in enacting the SLEA, removed the Secretary's discretion to reserve any right or retain any interest in the land; it did not invade the Secretary's discretion to impose terms and conditions upon the exchange, such as restrictive covenants, as long as the Secretary does not reserve any rights or retain any interest in the parcel itself.[6] Nor did it invade the Secretary's discretion to consider whether the lands to be acquired by the Forest Service will be "acceptable" in

light of any environmental consequences identified by a NEPA review, or whether there are ameliorative or mitigative measures which could or should be undertaken on other Green Mountain National Forest lands as a consequence of the exchange.

There is no clear and fundamental conflict between the duties imposed on the Forest Service by NEPA and by the SLEA, unlike the situation in *Flint Ridge*, where the Secretary could not comply with both statutes. The case at bar is also distinguishable from *Pacific Legal Foundation v. Andrus*, 657 F.2d 829, 835–37 (6th Cir.1981), where a statutory conflict was found between the Endangered Species Act and NEPA, so that an EIS was not required before a species could be listed as endangered. The Sixth Circuit found that filing an EIS before listing a species as endangered would not serve the purposes of the Endangered Species Act, nor would it serve the purposes for filing such a statement. It found, on the contrary, that NEPA's purpose of promoting protection of the environment was furthered by listing endangered species for protection. Conducting an environmental review before completing a proposed land exchange, however, is not in conflict with the purpose of the SLEA—to provide for a land exchange acceptable to the Secretary—nor is it in conflict with the purposes of NEPA. NEPA's purposes in fact are thwarted by exchanging this 57 acre parcel

---

**4.** In addition, according to the SLEA, the land SRHI conveys and/or the cash payment it makes to the United States must be "equal in value" to the value of the land it receives. An authorized officer of the Forest Service must make a determination, based on a qualified appraiser's report, whether the lands are approximately equal in value. 36 C.F.R. § 254.11 (199.7). An appraisal must include "historic, wildlife, recreation, wilderness, scenic, cultural, or other resource values or amenities as reflected in prices paid for similar properties in the competitive market." 36 C.F.R. § 254.9(b)(1)(iii) (1997). The Forest Service thus has a certain amount of discretion to consider environmental factors in its determination that the lands are equal in value as well.

**5.** The legislative history, scant though it is, appears to confirm this limited discretion. The Conference Report's two line reference to the Act states: "Section 326 *provides for* a land exchange between the Forest Service (Green Mountain National Forest) and Sugarbush Resort Holdings,

Inc. as proposed by the Senate. The House had no similar provision." H.R. Conf. Rep. No. 104–863 (1996) U.S.Code Cong. Admin.News 1996, p. 3009 (emphasis supplied). Other sections of the conference report describe statutes which transfer property, *mandate* boundary modifications, or *remove* acreage, leaving the agency no discretion to dictate the terms. *See id.*, §§ 321, 325, 327. Where land exchange is *authorized*, or *provided for*, the statutes afford the Secretary some discretion, while still requiring the conveyance of "all right, title and interest." *See id.*, §§ 324, 326. *But see* § 323, where "authorized" afforded discretion to convey "any interest."

**6.** The Court notes that the Forest Service has stated publicly that it intends to retain a road right-of-way easement as part of the land exchange, in apparent contradiction of its position stated in court that it lacks the discretion to do so. EA, "Mitigation Measures," ¶ 9 (Paper 8, Att. 4).

out of the National Forest System without undertaking a NEPA analysis.

The Secretary is able to conduct an environmental review of the proposed land exchange, including an evaluation of alternative combinations of land and/or cash to be received, and terms and conditions to be imposed, without disobeying the SLEA's command to convey the parcel to SRHI if the proposed exchange is acceptable to the Secretary.

As stated above, although the SLEA removes some discretion from the Secretary, it does not remove all discretion. For this reason, the various cases cited by the Federal Defendants and by SRHI are inapposite, because they involve situations where the agency had no discretion to consider environmental consequences, and was only minimally involved. In *Goos v. I.C.C.*, 911 F.2d at 1296, for example, where landowners sought environmental review of interim trail use under the Rails to Trails Act, the Eighth Circuit held that no major federal action was implicated. The I.C.C. was required to issue a Notice of Interim Trail Use if a railroad wished to discontinue rail service, and a prospective user of the right-of-way entered into negotiations with the railroad to take over financial responsibility for maintenance. The Notice did not mandate the conversion from rail to trail, but simply allowed two private parties to proceed to try to reach an agreement on the use of the right-of-way. Unlike the I.C.C. in that case, the Forest Service is an active party in this land exchange.

In *South Dakota v. Andrus*, 614 F.2d 1190 (8th Cir.1980), a state sought to compel the Department of the Interior to prepare an EIS before issuing a mineral patent to a mining company. Noting that the issuance of a mineral patent is a purely ministerial and non-discretionary act, the Eighth Circuit held also that it was not a major federal action because obtaining a patent did not enable a mining company to mine. The Court of Appeals stressed, however, that it recognized that NEPA applies to federal actions such as the one at issue here, which enable a private party to act so as to significantly affect the environment. *Id.* at 1194.

Similarly, in *N.A.A.C.P. v. Medical Center, Inc.*, 584 F.2d at 634, the Third Circuit held that ministerial approval by the Department of Health, Education and Welfare of a capital expenditures plan for a private non-profit hospital was not a major federal action where there was minimal federal involvement in the program.

In *Sierra Club v. Babbitt*, 65 F.3d 1502 (9th Cir.1995), a NEPA analysis was not required before a sawmill company could construct a logging road on its right-of-way crossing Bureau of Land Management land, despite a potential threat to habitat of the spotted owl. The right-of-way agreement predated NEPA, and specified three limited conditions under which the Bureau could halt construction, none relevant to threats to avian habitat.

By contrast, in *Forelaws on Board v. Johnson*, 743 F.2d 677 (9th Cir.1984), a statute mandating a power authority to offer new long-term hydroelectric power contracts to its preference and non-preference customers "as soon as practicable within nine months" of the statute's effective date did not deprive the administrator of discretion with respect to contract terms that might have an effect upon the environment, and an EIS was required.

These cases illustrate that where there is minimal federal involvement, where the federal agency has no power to affect the proposed action, or where there is no action to be taken, NEPA does not apply. Where, however, the federal agency is involved in the action, and where it is possible to comply with NEPA, NEPA analysis must be undertaken. Because the case at bar involves a major federal action, where the SLEA does not expressly prohibit NEPA analysis, where the agency's role is not confined to the purely ministerial, and where it has discretion to impose terms and conditions on the transaction and to approve or disapprove the transaction based on the acceptability of the lands to be acquired, the proposed land exchange is not exempt from NEPA. The Forest Service's determination to the contrary must be set aside as arbitrary and capricious and an abuse of discretion.

## B. *Categorical Exclusion*

The Federal Defendants contend that, even if NEPA applies to the land exchange, the Forest Service acted reasonably in determining that the exchange is categorically excluded from NEPA analysis. When an agreement between the Forest Service and a private party has been reached to exchange land, the proposal must be subjected to environmental analysis pursuant to NEPA. 36 C.F.R. § 254.3(g) (1997). A preliminary step is to decide whether an EIS or an EA must be prepared.[7] In determining whether to prepare an EIS, an agency must decide whether under its regulations, the action normally requires or does not require an EIS or an EA. 40 C.F.R. § 1501.4(a) (1997). Actions which have been determined not to require an EIS or an EA, because they have been found not to have a significant effect on the human environment, are known as "categorical exclusions." 40 C.F.R. § 1508.4 (1997).

The Forest Service has established categories of routine actions which normally do not have a significant effect on the quality of the human environment, and which therefore may be categorically excluded from documentation in an EIS or EA, absent extraordinary circumstances. FSH 1909.15 § 31.1b (1992). One category is a "[s]ale or exchange of land or interest in land and resources where resulting land uses remain essentially the same. Examples include but are not limited to: ... [e]xchanging National Forest System lands or interests with a ... non-Federal party (individual or organization) with similar resource management objectives and practices." FSH 1909.15 § 31.1b(7)(b).

After reviewing the comments received during the scoping process, the Forest Supervisor concluded that "[t]his proposed action may be categorically excluded from documentation in an environmental impact statement or assessment as it falls within Section 31.1b, and there are no extraordinary circumstances related to the proposed actions." Letter to file, April 7, 1997 (Paper 8, Att. 1).

The 57 acre parcel to be exchanged out of the National Forest System is designated as "Management Area 7.1." This designation is defined in the Land and Resource Management Plan for the Green Mountain National Forest as "highly developed areas ... includ[ing] lodges, campgrounds, downhill ski areas and other high density developments on or intermingled with National Forest lands." (Paper 8, Att. 4 at 14). Because the land would retain the same high density land management designation after a hotel was built, the Forest Service determined that the land uses before and after exchange would be essentially the same. It also concluded that it and SRHI had similar resource management objectives.

■ RESTORE contends that the decision to categorically exclude the proposed land exchange was arbitrary and capricious, and must therefore be set aside. *See Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 376–77, 109 S.Ct. 1851, 1860–61, 104 L.Ed.2d 377 (1989) (review of agency's factual determination controlled by "arbitrary and capricious" standard of 5 U.S.C. § 706(2)(A)). In making the factual inquiry concerning whether an agency decision was "arbitrary and capricious," a reviewing court must consider whether the decision was based on a reasoned evaluation of the relevant factors and whether there has been a clear error of judgment. *Id.* at 378, 109 S.Ct. at 1861–62. This inquiry must be "searching and careful, but the ultimate standard of review is a narrow one." *Id.,* quoting *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). *See also Abenaki Nation v. Hughes,* 805 F.Supp. 234, 240 (D.Vt.1992); *National Audubon Soc. v. Hoffman,* 917 F.Supp. 280, 287 (D.Vt.1995).

As the Second Circuit has stated:

Normally, an agency's action is held to be arbitrary and capricious when it relies on factors Congress did not want considered, or utterly fails to analyze an important aspect of the problem, or offers an expla-

---

7. An EIS is the detailed written statement required by 42 U.S.C. § 4332(C). An EA is a more concise document prepared to ascertain whether an EIS is necessary, to facilitate preparation of an EIS, or to aid agency compliance when an EIS is not necessary. 40 C.F.R. § 1508.9(a) (1997).

nation contrary to the evidence before it, or its explanation ... is so implausible that it cannot be ascribed to differing views or agency expertise.

*Sierra Club v. United States Army Corps of Engineers,* 772 F.2d 1043, 1051 (2d Cir.1985).

Having conducted a careful review of the facts in this case, this Court finds the Forest Service's conclusion that the proposed land exchange could be "categorically excluded" from environmental review under NEPA to be arbitrary and capricious.

First, the Forest Service ignored evidence presented to it, and the commands of its own Environmental Policy and Procedures Handbook. As previously described, the proposed land exchange underwent a required scoping process. FSH 1909.15 § 30.3(3). The Handbook directs that an EIS be prepared if scoping indicates that a proposed action might have a significant environmental effect. *Id.* In the instant case, scoping clearly indicated that the proposed land exchange might have a significant environmental impact.

For example, in response to the scoping letter, the Regional Administrator of the EPA stated, "I believe it is particularly important that an environmental analysis be prepared for this § 7 acre tract as the development of a destination resort and hotel conference complex by SRHI appears to be reasonably foreseeable and could have substantial impact on the environment." DeVillars letter (Paper 8, Att. 13). Other responses to the scoping letter echoed this concern. Management Area Designation EA at A–III, XIII, XIV; B–IV, XIV, XV (Paper 8, Att. 4).

In response to these concerns, the Forest Service stated summarily that "the appropriate level of NEPA analysis are [sic] contained in this document," and referred to the categorical exclusion language of § 31.1b(7)(b), with no explanation or analysis whatsoever as to why it considered the present and proposed land uses to be essentially the same, or how it considered itself as sharing similar resource management objectives and practices with SRHI.

Furthermore, in its Environmental Assessment of the Management Area Designations for the parcels to be acquired through the SLEA, the Forest Service stated that, without mitigation, construction of the hotel and parking lots could have a significant effect on soils, visual quality, water and fishery resources, wetlands, and public access to National Forest lands. EA at 28, 32, 36, 63, 71 (Paper 8, Att. 4).

Scoping, and the Forest Service's own analysis, thus indicated that the proposed land exchange could have a significant environmental effect, triggering the requirement to prepare an EIS. The receipt of comments indicating potential significant environmental effects, plus the Forest Service's apparent acknowledgment of significant environmental effects, cannot rationally be harmonized with the Forest Service's decision that the proposed action would not have a significant environmental effect.

Second, the Forest Service's decision to categorically exclude the proposed land exchange must be also be set aside because its rationale for categorical exclusion is implausible, and cannot be ascribed to "differing views or agency expertise." *Sierra Club v. Army Corps,* 772 F.2d at 1051. The Forest Service determined that the proposed land exchange could be categorically excluded because the land use of the exchanged parcel would remain essentially the same before and after the exchange, and because it and SRHI shared the same resource management objectives. This Court fails to see, nor can it glean from the record before it, any rational basis for concluding that a hotel/conference center is the same land use as a parking lot and tennis courts. The fact that the parcel's land management designation would remain the same does not signify that the land use would remain essentially the same. In addition, this Court has found no support in the record for the statement that the United States Forest Service and a private for-profit ski resort have similar resource management objectives and practices.

█ Consequently, the Court finds arbitrary and capricious the Forest Service's decision to categorically exclude the proposed action, because the Forest Service failed to analyze or explain its decision to exclude, the evidence before it indicated that the building

of a hotel/conference center could have a significant effect on the environment, and its rationale for categorical exclusion was not plausible.

In reaching this conclusion, the Court expresses no opinion on the merits of the land exchange or of the proposed development. In enacting NEPA Congress has required federal agencies to consider the environmental consequences of their actions. This obligation cannot be evaded because compliance may be inconvenient or time-consuming.

## IV. *Conclusion*

The Plaintiff's Motion for Summary Judgment (Paper 5) is GRANTED. The Defendants' Motion for Summary Judgment (Paper 8) is DENIED. The Intervenor's Motion for Summary Judgment (Paper 11) is DENIED. Plaintiff's Motions for Temporary Restraining Order and Preliminary Injunction (Papers 2, 3) are DENIED as moot. Defendants are hereby ENJOINED to comply with the provisions of NEPA in implementing the SLEA, as the proposed land exchange is neither exempted nor categorically excluded from NEPA review. Defendants are furthermore ENJOINED from proceeding with the contemplated land exchange until the appropriate NEPA analysis has been conducted.