**Flossie E. LEE, et al.**

v.

**Richard THORNBURGH, Attorney General, et al., and District of Columbia, et al., Appellants.**

**Nos. 89-5043, 89-5086.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 18, 1989.

Decided June 27, 1989.

John M. Facciola, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates, R. Craig Lawrence and Michael L. Martinez, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellants Richard Thornburgh, et al.

Lutz Alexander Prager, with whom Frederick D. Cooke, Jr. and Charles L. Reischel, Washington, D.C., were on the brief, for appellants District of Columbia, et al.

Andrea C. Ferster, Washington, D.C., for appellees.

David A. Doheny and Elizabeth S. Merritt, Washington, D.C., were on the brief for amicus curiae The Nat. Trust for Historic Preservation in the U.S., urging affirmance.

Before MIKVA and WILLIAMS, Circuit Judges, and WILL,* Senior District Judge.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

This appeal requires us to consider when §§ 106, 110(b) and 110(d) of the National Historic Preservation Act ("NHPA"), codified at 16 U.S.C. §§ 470f, 470h–2(b) and 470h–2(d) (1982), impose obligations affecting projects undertaken by the District of Columbia. The district court enjoined the federal and District appellants from proceeding with construction of a local prison before complying with these NHPA provisions because it found that the project had received various forms of federal assistance, 707 F.Supp. 600 (7th Cir.1989). We vacated that injunction on May 18, 1989 so that the costs to the District caused by the delay would not continue to mount. This opinion is in support of that order vacating the injunction. We conclude that the stat-

---

* The Honorable Hubert L. Will, of the United States District Court for the Northern District of Illinois, sitting by designation pursuant to 28 U.S.C. § 294(d) (1982).

ute, by its terms, has a narrower reach and is triggered only if a federal agency has the authority to license a project or to approve expenditures for it. As no federal agency has or had such authority over the proposed D.C. prison, we reverse.

## I. BACKGROUND

The District of Columbia, facing severe prison overcrowding, proposes to build a new Correctional Treatment Facility in southeast Washington, D.C., adjacent to the D.C. General Hospital and south of the D.C. Jail. The project is funded, like many district projects, by direct congressional appropriation. In 1985, Congress appropriated $30 million for a new District prison, providing the District's design and construction plans met Congress' approval. *See* Joint Resolution of December 19, 1985, Pub.L. 99–190, § 101(c), 99 Stat. 1185, 1224 (incorporating H.R.Conf.Rep. No. 419, 99th Cong., 1st Sess. 3, 4 (1985)). ("Appropriations Act of 1986").

The United States Department of Justice ("DOJ"), which bears responsibility for designating the place of confinement for those convicted of District of Columbia offenses, see D.C.Code Ann. §§ 24–402, 24–425 (1981), had been assigning D.C. prisoners to federal facilities in the interim. DOJ also urged Congress to encourage it to appropriate funds for a new D.C. prison. DOJ, however, has no role in the construction and operation of District of Columbia prisons. *See* D.C.Code Ann. §§ 24–441, 24–442 (1981); Appropriations Act of 1986 at 1224.

The proposed site is owned by the United States. It is part of Reservation 13 of the original City of Washington. There is conflicting evidence over when and why Congress had transferred jurisdiction over this land to the District in the late 19th century, but it is undisputed that Congress granted permission to the District in 1917 to build and operate on the site what is now known as Gallinger Hospital. The existence of the Hospital fuels a large piece of this controversy. Before the District chose this site for the new jail, both the District and DOJ had identified several land parcels under federal jurisdiction as possible sites, but these were rejected as unavailable or unsuitable.

In 1986, Congress approved the jail site chosen by the District government and appropriated an additional $20 million for the project. *See* Joint Resolution of October 30, 1986, Pub.L. 99–591, 100 Stat. 3341–181 ("Appropriations Act of 1987"). In 1987, Congress placed a moratorium on the use of any of the appropriated funds at the proposed site, pending a study of alternatives by the General Accounting Office. *See* Joint Resolution of December 22, 1987, Pub.L. 100–202, 101 Stat. 1329–91 ("Appropriations Act of 1988"). In May 1988, the moratorium was lifted.

This suit was brought by three neighborhood community groups and eleven area residents who seek to block the project on the ground that the planning process had not complied with NHPA. They contend that NHPA applies to the project because it has and will receive certain kinds of federal assistance and because the prison's construction would (1) require the demolition of the Gallinger Hospital, which was nominated for the National Register of Historic Places just prior to the lawsuit, (2) disturb an archeological site on the Gallinger grounds, and (3) in some way adversely affect the Congressional Cemetery next door. The hospital was constructed in 1922, in colonial revival style. Appellants acknowledged that the planning process for the prison did not comply with NHPA.

The district court found that NHPA applied because the prison will be built with federal funds, because the site is owned by the United States, because DOJ encouraged Congress to appropriate funds for the project, and because federal approval was a legal condition precedent to using the site.

## II. DISCUSSION

### A. *The Statute*

■ NHPA, 16 U.S.C. §§ 470 *et seq.*, encourages historic preservation by establishing an independent advisory agency, authorizing grants and loans, and imposing obligations in certain circumstances. It is

those circumstances that concern us here. Our review of the statutory text persuades us that Congress intended these provisions to have a limited reach; they are aimed solely at discouraging federal agencies from ignoring preservation values in projects they initiate, approve funds for or otherwise control.

First, NHPA imposes obligations only on federal agencies, a term expressly defined to exclude Congress and the District of Columbia. *See* 16 U.S.C. § 470w(1); 5 U.S.C. § 551(1)(A), (D). NHPA imposes no obligations on state governments and includes the District of Columbia in its definition of "state." *See* 16 U.S.C. § 470w(2).

Second, NHPA imposes obligations only when a project is undertaken either by a federal agency or through the auspices of agency funding or approval. Three provisions of NHPA are at issue here, but all three provisions are triggered only when approval or financial assistance from a federal agency is involved. Section 106 of the statute requires that:

> The head of any Federal agency having *direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking* in any State and the head of any Federal department or independent agency having *authority to license* any undertaking shall, *prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license,* as the case may be, take into account the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register. The head of any such Federal agency shall afford the Advisory Council on Historic Preservation * * * a reasonable opportunity to comment with regard to such undertaking.

16 U.S.C. § 470f (emphasis added). The provision imposes obligations on agencies in either of two situations. An agency having authority to license an undertaking may not issue such a license without fulfilling these obligations. Likewise, an agency with jurisdiction over a federal or federally-assisted project must comply before ap-

proving funds for it. By its own terms, section 106 imposes obligations only in these limited circumstances. *See generally Edwards v. First Bank of Dundee,* 534 F.2d 1242, 1245–46 (7th Cir.1976); *Techworld Development v. D.C. Preservation League,* 648 F.Supp. 106, 119 (D.D.C.1986)

■ The other two provisions at issue are subsections of § 110, which is also addressed to the responsibilities of federal agencies under the Act. Subsection 110(b) requires that:

> Each Federal agency shall initiate measures to assure that where, *as a result of Federal action or assistance carried out by such agency,* an historic property is to be substantially altered or demolished, timely steps are taken to make or have made appropriate records, and that such records then be deposited * * * in the Library of Congress or with such other appropriate agency as may be designated by the Secretary, for future use and reference.

16 U.S.C. § 470h–2(b) (emphasis added). Subsection 110(d) requires that:

> Consistent with the agency's missions and mandates, all Federal agencies shall carry out *agency programs and projects (including those under which any Federal assistance is provided or any Federal license, permit, or other approval is required)* in accordance with the purposes of this subchapter and, give consideration to programs and projects which will further the purposes of this subchapter.

16 U.S.C. § 470h–2(d) (emphasis added). Like § 106, these subsections impose specific obligations in two situations. In § 106, obligations are imposed when federal agencies have the authority to *license* a project or to *approve the expenditure of funds* on it. In § 110(d), obligations are imposed when federal agencies have the authority to *license* a project or to *provide assistance* for it. Reading these two provisions of NHPA together, *see Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 445, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987), we find that "providing federal assistance" means "approving the expendi-

ture of federal funds." We reject any suggestion that we should apply different measuring sticks to the various statutory provisions because we hold that the doctrine of *in pari materia* properly applies. These are provisions of the same statute and relate to the same purposes and subject—the responsibilities assigned to federal agencies with respect to historic preservation. *Cf. Common Cause v. Federal Election Commission*, 842 F.2d 436, 441–42 (D.C. Cir.1988).

Moreover, if these two provisions are not read *in pari materia,* they point in opposite directions. For instance, in a non-licensing situation, if § 110(d) were triggered every time a federal agency provided even tangential assistance, but § 106 were only triggered when a federal agency had the authority to approve funds, the statute would permit agencies to fund projects without giving any consideration to the effect on historic properties while simultaneously requiring them to carry out all their activities—including the award of grants—in accordance with preservation values. It is unreasonable to presume that Congress intended such an incongruous and paradoxical result.

The legislative history of § 110, though scant, supports our reading of that section in conjunction with § 106. Section 110 was added to NHPA when the act was amended in 1980; the House version was passed. *See* 126 Cong.Rec. 29,831, 30,194 (1980). The House Report describes the section as follows: "[It] clarifies and codifies the minimum responsibilities expected of Federal agencies in carrying out the purposes of this Act * * *. It is not intended to change the preservation responsibilities of Federal agencies as required by any other laws, executive orders or regulations * * *." H.R.Rep. No. 1457, 96th Cong., 2d Sess. 36 (1980), *reprinted in* 1980 U.S.Code Cong. & Admin.News 6378, 6399. We cannot read "federal assistance" as appellees would have us, to encompass every kind of tangential, non-monetary assistance from a federal agency, without deciding, in direct conflict with Congress' express intent, that § 110 expanded NHPA's sweep far beyond the limits previously established by § 106.

Our reading of § 110(b) is governed by the same considerations. This subsection is also structured to apply to two situations, characterized as federal agency *action* and federal agency *assistance.* Construed together with § 106 and § 110(d), such terms shed their ambiguity; agency "action" refers to the granting of a license or other required approval, agency "assistance" to approving the expenditure of funds.

### B. *Application*

■ The applicability of these three NHPA provisions turns on whether any federal agency approved funds or granted necessary permissions for the proposed District of Columbia Correctional Treatment Facility. We conclude that none did. The funds for the project were appropriated directly by Congress to the District. Congress did not funnel the funds through any federal agency. *See* Appropriations Act of 1986 at 1224; Appropriations Act of 1987 at 3341–181.

Nor did Congress delegate any approval functions related to the proposed facility to any agency. Indeed, Congress expressly reserved to itself the right to approve or disapprove the site, the design and the construction plans of the prison. *See* Appropriations Act of 1986 at 1224. Congress actively exercised its right to approve or disapprove the project—first approving it, then putting it on hold, and finally releasing its hold. *See* Appropriations Act of 1987 at 3341–181; Appropriations Act of 1988 at 1329–91.

Furthermore, there is no evidence to support appellees' claim that federal agency approval was required before the District could use the Gallinger site for the Correctional Treatment Facility. While there is evidence that the District sought DOJ's agreement to the site and that DOJ checked with both the General Services Administration ("GSA") and the Department of the Interior to "clear" the site, none of these agencies actually claim to have had the authority to grant or refuse permission. The evidence instead shows that GSA re-

sponded that it had no jurisdiction over the site because the site was controlled by the District government and that the National Park Service (for the Department of the Interior) responded that it possessed no interest in the land upon which the District proposed to build its prison. DOJ has never claimed authority to approve the site for the facility either. Indeed, the District ignored DOJ's advice when it chose the Gallinger site; DOJ had recommended the old D.C. Jail site down the block. We need not address the dispute between federal and District appellants as to whether the District could convert the Gallinger site from hospital to prison without express permission from Congress because its resolution has no legal implications here. In neither case would the NHPA provisions be applicable to the project. Moreover, whether it needed to or not, Congress has already given its permission.

The one federal agency with any involvement at all in the District's proposed prison is DOJ, but that involvement consisted of no more than looking into whether there were any appropriate federally-controlled sites within the District that could be transferred to the District government for this purpose and urging Congress to appropriate funds for the much-needed facility. We need not decide what level of non-monetary assistance provided by a federal agency out of its operating budget would constitute an approval of federal funds within the meaning of NHPA. Today, we hold only that such a negligible involvement as occurred here does not trigger the provisions of NHPA.

### III. CONCLUSION

The National Historic Preservation Act is a narrow statute. Its main thrust is to encourage preservation of historic sites and buildings rather than to mandate it. It leaves not only Congress free but also the states, opting for the carrot, in the form of grants, rather than the stick. Federal agencies, in contrast, are commanded to value preservation, and are subject to certain requirements—but only in relation to projects or programs they initiate or con-

trol through funding or approvals. It is their own nest Congress has asked the agencies not to foul.

The provisions of NHPA restricting the actions of federal agencies do not apply to the proposed District of Columbia Correctional Treatment Facility because the planning and construction of that facility is neither funded nor dependent on approval by a federal agency. Congress expressly delimited the reach of these provisions. If a higher priority is to be given the preservation of historic properties by making more government action defer to such concerns, the statute must be extended beyond its present parameters. It is for Congress, not the courts, to decide if NHPA should cut a broader swath. For the foregoing reasons, the judgment is

*Reversed.*