49 F.3d 750
 311 U.S.App.D.C. 16
 SHERIDAN KALORAMA HISTORICAL ASSOCIATION, a District of
Columbia Non-Profit Corporation; D.C. Preservation League,
a District of Columbia Non-Profit Corporation; National
Trust for Historic Preservation in the United States, a
Non-Profit Corporation Chartered by Congress, Appellants,
v.
Warren CHRISTOPHER, in his Official Capacity as Secretary,
U.S. Department of State; David C. Fields, in His Official
Capacity as Director, Office of Foreign Missions, State
Department; D.C. Foreign Missions Act-Board of Zoning
Adjustment; Lacy C. Streeter, in His Official Capacity as
Acting Director, D.C. Department of Consumer and Regulatory
Affairs, Appellees,
United States of America; Republic of Turkey, Intervenors.
 Nos. 93-5313 to 93-5315 and 94-5080 to 94-5086.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Nov. 3, 1994.
Decided March 10, 1995.
 
 Appeal from the United States District Court for the District of Columbia (91cv00564).
 Richard B. Nettler argued the cause for appellants Sheridan Kalorama Historical Ass'n and D.C. Preservation League, Stephen M. Truitt argued the cause for appellant National Trust for Historic Preservation. With them on the briefs was Charles H. Carpenter. David A. Doheny and Elizabeth S. Merritt entered appearances for appellants.
 Michael S. Raab argued the cause for appellees Warren Christopher and David C. Fields. With him on the briefs were Frank W. Hunger, Asst. Atty. Gen., Eric H. Holder, Jr., U.S. Atty., Michael J. Singer and John P. Schnitker, U.S. Dept. of Justice.
 Vanessa Ruiz, Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Lutz Alexander Prager, Asst. Deputy Corp. Counsel, were on the brief for appellees District of Columbia-Board of Zoning Adjustment and Lacy C. Streeter.
 Whayne S. Quin argued the cause for intervenor Republic of Turkey. With him on the briefs was Louis P. Robbins.
 Before WALD, STEPHEN F. WILLIAMS, and GINSBURG, Circuit Judges.
 GINSBURG, Circuit Judge:
 
 
 1
 The National Trust for Historic Preservation and two local historic preservation groups brought suit against the Secretary of State, the District of Columbia Foreign Missions Act-Board of Zoning Adjustment (DCFMA-BZA or Board), and the Director of the District of Columbia Department of Consumer and Regulatory Affairs in an effort to prevent the Republic of Turkey from demolishing and replacing its chancery building in Washington, D.C. The Republic of Turkey intervened as a defendant.
 
 
 2
 The district court dismissed the plaintiffs' claims that the Secretary of State had not complied with the National Historic Preservation Act (NHPA), 16 U.S.C. Sec. 470 et seq., in approving Turkey's proposal to replace its chancery, and that the DCFMA-BZA did not have jurisdiction over Turkey's proposal. National Trust for Historic Preservation v. Department of State, 834 F.Supp. 443 (D.D.C.1993) (NTHP I). The court then granted the plaintiffs partial summary judgment on their claim that the DCFMA-BZA's failure to refer Turkey's proposal to the Advisory Council on Historic Preservation (ACHP) (an "independent federal agency," 16 U.S.C. Sec. 470i) violated the Foreign Missions Act (FMA), 22 U.S.C. Sec. 4301 et seq.; D.C.Code Sec. 5-1201 et seq., but dismissed the claim insofar as it alleged that the Board had not properly referred the proposal to District of Columbia authorities. National Trust for Historic Preservation v. Department of State, 834 F.Supp. 453 (D.D.C.1993) (NTHP II).
 
 
 3
 The plaintiffs appeal these rulings; the defendants and intervenors (including the United States, which intervened after the district court entered final judgment) cross-appeal the district court's ruling on the issue of compliance with the FMA. For the reasons set forth below, we agree with the defendant-appellees and cross-appellants on all counts. We therefore reverse the district court's ruling that the defendants were required to submit Turkey's proposal to the ACHP and affirm its rulings in all other respects.
 
 I. Background
 
 4
 The Republic of Turkey's chancery building at 2523 Massachusetts Avenue, N.W., which was constructed in 1929, is located in both the Massachusetts Avenue and the Sheridan-Kalorama Historic Districts. Turkey has sought to demolish this building and construct a new chancery facility at the site since at least 1986, when it first proposed its project to District of Columbia authorities. After twice failing to secure approval, Turkey submitted a modified proposal to the DCFMA-BZA in September 1990.
 
 
 5
 Under District of Columbia regulations, a chancery proposal must be accompanied by a letter from the State Department indicating compliance with Sec. 205 of the FMA. See 11 D.C.M.R. Sec. 3340.7. Section 205 of the FMA requires a foreign mission to notify the Secretary of State of "any acquisition or alteration of, or addition to, any real property or any change in the purpose for which real property is used," 22 U.S.C. Sec. 4305(a)(2), and gives the Secretary 60 days within which to disapprove the project. 22 U.S.C. Sec. 4305(a)(1). The State Department sent a timely letter to the DCFMA-BZA certifying that Turkey had complied with Sec. 205 of the FMA.
 
 
 6
 Section 206 of the FMA sets out the six criteria upon which the DCFMA-BZA is to base its determinations regarding chancery proposals, one of which is historic preservation. 22 U.S.C. Sec. 4306(d)(2). Specifically, the statute provides that "in order to ensure compatibility with historic landmarks and districts, substantial compliance with District of Columbia and Federal regulations governing historic preservation shall be required." Id. In furtherance of this policy, the DCFMA-BZA forwarded a copy of Turkey's proposal to the District of Columbia Mayor's Agent for Historic Preservation (MAHP), and to the District of Columbia Historic Preservation Review Board (HPRB), a local body established under the NHPA. See 16 U.S.C. Sec. 470a(b); D.C.Code Sec. 5-1003. Under District of Columbia regulations, the HPRB is charged with advising the DCFMA-BZA "on the new construction, demolition and alteration of foreign missions, [and] chanceries ... pursuant to the [FMA]." 10 D.C.M.R. Sec. 2602.4. The regulations accordingly require the DCFMA-BZA to refer a chancery proposal to the HPRB for a "report and recommendation" when the proposal "requires review and processing of new construction, demolition, or alteration pursuant to the [NHPA]." 11 D.C.M.R. Sec. 1002.7. The HPRB's role is only advisory, however, for "[t]he final determination as to substantial compliance with D.C.Law [ ] and federal regulations governing historic preservation shall be made by the [DCFMA-BZA]." 11 D.C.M.R. Sec. 1002.8.
 
 
 7
 The HPRB recommended that the DCFMA-BZA deny Turkey's proposal. (The MAHP never made any recommendation.) Nevertheless, in March 1991 the DCFMA-BZA approved Turkey's proposal; the Board determined that the "historic preservation criterion [of FMA Sec. 206] has been satisfied," as the proposed project is "compatible with the historic district in which it is located." The plaintiffs then filed this suit for declaratory and injunctive relief.
 
 
 8
 On the plaintiffs' motions for summary judgment and the defendants' motions to dismiss, the district court ultimately ruled in favor of the defendants on three issues relevant to this appeal. First, the court concluded that the Secretary of State was not required to submit Turkey's proposal to the ACHP for comment under Sec. 106 of the NHPA. NTHP I, 834 F.Supp. at 449-51. Second, it held that the DCFMA-BZA had jurisdiction over Turkey's proposal. Id. at 451-52. Third, it concluded that the Board satisfied the FMA requirement of ensuring substantial compliance with D.C. regulations by referring Turkey's proposal to the MAHP. NTHP II, 834 F.Supp. at 455. On the remaining issue in the case the court agreed with the plaintiffs, holding that the DCFMA-BZA should have referred the proposal to the ACHP as well in order to ensure substantial compliance with applicable federal regulations regarding historic preservation. NTHP I, 834 F.Supp. at 452.
 
 II. Analysis
 
 9
 The plaintiffs claim that the district court erred in the first three decisions listed above. The defendants claim error with regard to the fourth issue.
 
 
 10
 A. The Secretary of State's duty under Sec. 106 of the NHPA
 
 
 11
 The plaintiffs argue that the Secretary of State's failure to disapprove Turkey's proposal under Sec. 205 of the FMA constitutes an "undertaking" within the meaning of Sec. 106 of the NHPA* and that, therefore, the Secretary was required to afford the ACHP a reasonable opportunity to comment on the proposal. As discussed below, no tenable reading of the statute supports such a view. At most, Turkey's project--not the Secretary's failure to disapprove it--is an "undertaking" within the meaning of Sec. 106. In any event, the statute applies only to an "undertaking" that receives federal funding or a federal license, and Turkey's chancery project received neither.
 
 
 12
 1. Is the Secretary's failure to disapprove an "undertaking"?
 
 
 13
 Section 106 requires each federal agency to "take into account the effect of [a proposed] undertaking" upon historic properties and to "afford the [ACHP] a reasonable opportunity to comment with regard to such undertaking" prior to the agency's funding or licensing it. Accordingly, federal authority to fund or to license a project can render the project an undertaking, but the decision of the funding or licensing agency is not itself an undertaking. The plaintiffs' contrary suggestion is peculiar indeed. If the Secretary's "decision" by inaction not to disapprove Turkey's proposal under the FMA were an "undertaking," then so too would be every decision he makes. The plaintiffs have no interest, however, in having the ACHP review the internal decision-making process of the State Department; their interest is in having the ACHP review Turkey's plan to demolish and reconstruct its chancery before the State Department considers the proposal.
 
 
 14
 The State Department's failure to disapprove Turkey's proposal may have been a prerequisite to Turkey's project going forward, but it cannot itself be an undertaking within the meaning of the statute. Therefore, if Sec. 106 applies to this case, it is only because the demolition and reconstruction of Turkey's chancery is an "undertaking" and is funded or licensed by the Secretary.
 
 
 15
 2. Is Turkey's proposal an "undertaking"?
 
 
 16
 In 1990, when the Secretary of State could have but did not disapprove Turkey's proposal, the NHPA defined an "undertaking" by indirection, viz., as "any action as described in [Sec. 106 of the Act]." 16 U.S.C. Sec. 470w(7) (1988). In 1992, however, the Congress amended the definition of "undertaking" in the NHPA to read in pertinent part as follows:
 
 
 17
 "Undertaking" means a project, activity, or program funded in whole or in part under the direct or indirect jurisdiction of a Federal agency, including ... (c) those requiring a Federal permit[,] license, or approval....
 
 
 18
 16 U.S.C. Sec. 470w(7) (Supp. IV 1992). The plaintiffs argue that this definition applies retroactively to Turkey's proposal, and that the Secretary's authority to disapprove the proposed project rendered it a "project ... requiring a Federal permit[,] license, or approval"--in short, an "undertaking."
 
 
 19
 The question whether the new definition applies retroactively to Turkey's project is complicated by the timing of the amendment. It was enacted after the time for the Secretary's review had passed--indeed, it was enacted after the plaintiffs had filed this suit in district court. See Landgraf v. USI Film Products, --- U.S. ----, ----, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994) (holding statutes that "would impair rights a party possessed when he acted ... or impose new duties with respect to transactions already completed" should not be applied retroactively absent an indication of clear congressional intent to the contrary). Rather than explore the mysteries of retroactivity doctrine as applied to these facts, however, we will assume for the sake of the plaintiffs' argument that the 1992 definition applies, for even under that version of the statute the plaintiffs fall short of their mark.
 
 
 20
 Upon a first reading, the amended definition seems actually to confine the notion of an "undertaking" to a project (etc.) "funded in whole or in part under the direct or indirect jurisdiction of a federal agency," and thus by omission to exclude a federally licensed project from the coverage of the statute. That reading of the definition, however, would deprive the references to licensing in Sec. 106 of any practical effect. We infer, therefore, that the amending Congress intended to expand the definition of an "undertaking"--formerly limited to federally funded or licensed projects--to include projects requiring a federal "permit" or merely federal "approval."
 
 
 21
 Of course, the Secretary was not called upon by the FMA to "approve" Turkey's proposal, but rather to disapprove it or not, as he saw fit. Other things being equal, we are hesitant to conclude that "failure to disapprove" means "approve" in this context, where the result would be to impose a regulatory burden upon the Secretary of State and, more important, to intrude into his conduct of the Nation's foreign relations. The plaintiffs argue, however, that we should overcome our reluctance to decide the question against the Secretary because the ACHP--to which we extend "substantial" even if not full deference under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), see McMillan Park Committee v. National Capital Planning Commission, 968 F.2d 1283, 1287-88 (D.C.Cir.1992)--regards his failure to disapprove as an "approval" under the amended definition of "undertaking" in 16 U.S.C. Sec. 470w(7)(c). Here the plaintiffs direct us first to a letter from the ACHP to the State Department dated August 25, 1988, opining that the Secretary was required by Sec. 106 to submit Turkey's proposal to the ACHP and to a recent notice of proposed rulemaking in which the ACHP proposes to amend the definition of "undertaking" in its regulations under the NHPA specifically to include any project that "requires a Federal permit, license[,] or approval, including agency authority to disapprove or veto the project." 59 Fed.Reg. 50396, 50404 (October 3, 1994); see also 36 C.F.R. Sec. 800.2(o). First, the ACHP's 1988 letter to the Secretary proffered its interpretation of Sec. 106 prior to the amendment of the definition of "undertaking" in 1992. Yet the plaintiffs have not argued, even in the alternative, that Turkey's project is an undertaking under that definition. Second, it is far from obvious that the court should defer to an agency's proposed interpretation, upon which it is still considering public comments.
 
 
 22
 As it turns out, however, we need not decide whether the ACHP's interpretation of "undertaking" warrants our deference. For as shown below, even if Turkey's project is an "undertaking" within the meaning of 16 U.S.C. Sec. 470w(7), the Secretary was still not required to submit the proposal to the ACHP because the Secretary neither has "authority to license" nor has he "issu[ed] any license" for Turkey's undertaking, as is required for Sec. 106 to apply. 16 U.S.C. Sec. 470f.
 
 
 23
 3. Is Turkey's project "federally licensed"?
 
 
 24
 The plaintiffs--and indeed the ACHP, see, e.g., 59 Fed.Reg. 50396, and some other courts, see, e.g., Morris County Trust for Historic Preservation v. Pierce, 714 F.2d 271 (3d Cir.1983)--proceed as if the review provision of Sec. 106 automatically applies once a project is deemed an "undertaking." Such confusion is understandable; for the 1992 amendment oddly appends the concepts of "licensing" and "approval" to the definition of "undertaking," even though the text of Sec. 106 still applies by its terms only to federally funded or federally licensed undertakings. Thus however broadly the Congress or the ACHP define "undertaking," Sec. 106 applies only to: 1) "any Federal agency having ... jurisdiction over a proposed Federal or federally assisted undertaking"; and 2) "any Federal ... agency having authority to license any undertaking." 16 U.S.C. Sec. 470f. Such an agency is required, as the case may be, either to take certain actions "prior to the approval of the expenditure of any Federal funds on the undertaking," or "prior to the issuance of any license." See Lee v. Thornburgh, 877 F.2d 1053, 1056-57 (D.C.Cir.1989). Therefore, unless Turkey's efforts to replace its chancery are either federally funded or federally licensed, Sec. 106 simply does not apply to its project.
 
 
 25
 The plaintiffs do not suggest that Turkey's project will receive any federal funds; therefore, Sec. 106 applies only if the State Department "licensed" the project when the Secretary failed to disapprove it under the FMA. The NHPA and the regulations promulgated thereunder provide no definition of "license," and the plaintiffs have not shown that the statute uses that term in anything other than its ordinary sense. Indeed, the closest the plaintiffs come even to arguing that Turkey's project was issued a federal license is in their contention that Turkey's proposal received a "permit[,] license, or approval" so as to bring it within the scope of the definition of an "undertaking."
 
 
 26
 Yet even if we transpose the plaintiffs' argument from the definition of an "undertaking" to the meaning of the term "license," we are still not convinced that Sec. 106 applies in this case. This court has never decided whether failure to disapprove a project is equivalent to licensing a project under Sec. 106. In Lee we held that "clearing" a project with a federal agency that did not have "the authority to grant or refuse permission" did not amount to a federal licensing of the project. 877 F.2d at 1057. In McMillan Park, a majority of the panel declined to reach the issue whether the National Capital Planning Commission's review of a local plan to permit commercial development in an historic district triggered the Sec. 106 process. 968 F.2d at 1287; cf. id. at 1290 (Randolph, J., concurring) (reasoning that NCPC's review of D.C. City Council's amendment of comprehensive plan was not an "undertaking" where NCPC had the power only to veto).
 
 
 27
 Other circuit courts have also been cautious in extending the reach of Sec. 106 beyond the grasp of its terms. See Yerger v. Robertson, 981 F.2d 460, 465 (9th Cir.1992) (holding Forest Service refusal to renew land-use permit does not trigger Sec. 106 even though refusal was "clearly preparatory to action that will affect the site's historical character"); Waterford Citizens' Association v. Reilly, 970 F.2d 1287, 1292 (4th Cir.1992) (holding EPA continuing authority to exercise control over project does not render project a federal undertaking); Sugarloaf Citizens Association v. FERC, 959 F.2d 508, 515 (4th Cir.1992) (holding FERC certification of incinerator does not amount to licensing project); Village of Los Ranchos de Albuquerque v. Barnhart, 906 F.2d 1477, 1484 (10th Cir.1990) (holding Federal Highway Administration approval of environmental impact study does not require compliance with the NHPA). See also INS v. Chadha, 462 U.S. 919, 958 n. 23, 103 S.Ct. 2764, 2787 n. 23, 77 L.Ed.2d 317 (1983) (rejecting argument that "because congressional approval is indicated by the failure to veto, the one-House veto satisfies the requirement of bicameral approval"). Yet, as the district court said in its opinion in this case: "A judicial interpretation of 'license' as including not only explicit written permission but also a failure to veto a project when possible would read all limitations out of the Act." NTHP I, 834 F.Supp. at 450; accord Weintraub v. Rural Electrification Administration, 457 F.Supp. 78, 92 (M.D.Pa.1978).
 
 
 28
 Though the meaning of "license" may be broad in some statutory contexts, see Atlantic Richfield Co. v. United States, 774 F.2d 1193, 1200 (1985); 5 U.S.C. Sec. 551(8) (defining license to include any "form of permission"), we have never found it so broad as to encompass failure to disapprove a proposal. Nor should we do so in this case, where the context cautions against so capacious an interpretation of the text.
 
 
 29
 First, the Secretary's consideration of a chancery proposal pursuant to the FMA, being bound up with security concerns and issues of reciprocity among nations, see 22 U.S.C. Sec. 4301(b); S.Rep. No. 329, 97th Cong., 2d Sess. 2 (1982) (noting that FMA "regulatory mechanisms ... are designed to provide the State Department with the leverage necessary to remove ... unreasonable restraints and costs on U.S. missions abroad"), is highly discretionary. Indeed, there are no substantive criteria in the statute to limit the Secretary's discretion. It would be singularly inappropriate, therefore, for a court operating without a clear mandate from the Congress to encumber the exercise of that discretion with the requirement that proposals be shunted back and forth between agencies.
 
 
 30
 Second, the NHPA was passed in 1966, the relevant portions of the FMA in 1982. The later statute was designed in part to "insure an expeditious process which will avoid ... extensive and overlapping proceedings." H.R.Conf.Rep. No. 693, 97th Cong., 2d Sess. 41 (1982) U.S.Code Cong. & Admin.News 1982 at pp. 651, 703. To conclude that the Congress intended the FMA review provisions to trigger the NHPA review process would be inconsistent with that goal. The inconsistency is all the more glaring when one considers that, as discussed below, the Congress made provision in the FMA itself for the DCFMA-BZA to take historic preservation issues into account. The more plausible reading of the statutes in pari materia, therefore, is that by not requiring the Secretary's affirmative approval of chancery proposals, the Congress specifically meant to avoid subjecting the Secretary to the procedures of the NHPA and perhaps of similar statutes. See, e.g., Sugarloaf Citizens Association, 959 F.2d at 515 (noting analysis for requirement of "detailed statement" of environmental effects of a "major federal action" in 42 U.S.C. Sec. 4332(C) similar to NHPA inquiry).
 
 
 31
 The plaintiffs in effect contend that their expansive interpretation of "undertaking," and the ACHP's equally generous interpretation of that same term, somehow convert Turkey's undertaking into a federally licensed undertaking. They have argued, that is, not only that a project need not receive an actual license in order to be an "undertaking"--a point upon which we need not rule today--but also that a project that does not receive an actual license can be a federally licensed project--a point that we squarely reject. We therefore affirm the district court's conclusion that the Secretary of State was not required to comply with the review procedures mandated by Sec. 106 of the NHPA.
 
 B. The jurisdiction of the DCFMA-BZA
 
 32
 The plaintiffs' second claim is that the district court erred in concluding that the DCFMA-BZA has jurisdiction over Turkey's proposal. Though they do not say who in their view does have such jurisdiction, presumably it would be the ordinary zoning and land-use authorities of the District of Columbia.
 
 
 33
 The provisions of Sec. 206 of the FMA are, as the district court noted, "far from models of clarity." NTHP I, 834 F.Supp. at 452. The most plausible reading of the statute, however, is that it gives the DCFMA-BZA exclusive jurisdiction over all proposals involving "the location, replacement, or expansion of chanceries in the District of Columbia." 22 U.S.C. Sec. 4306(a). After all, the statute contemplates that a foreign mission will file an application with the DCFMA-BZA "with respect to such location, replacement, or expansion," 22 U.S.C. Sec. 4306(b)(2), (c)(3); provides that the decision of the DCFMA-BZA "shall not be subject to the administrative proceedings of any other agency or official," 22 U.S.C. Sec. 4306(c)(3); and allows for the operation of other laws "only to the extent they are consistent with [Sec. 206]." 22 U.S.C. Sec. 4306(j).
 
 
 34
 The plaintiffs argue nonetheless that the DCFMA-BZA had no jurisdiction over Turkey's proposal to demolish and rebuild its chancery, primarily because paragraph (c)(1), the only portion of the statute that expressly requires a foreign mission to file an application with the DCFMA-BZA, states:
 
 
 35
 If a foreign mission wishes to locate a chancery in an area described in subsection (b)(2) of this section, or wishes to appeal an administrative decision relating to a chancery based in whole or in part upon any zoning map or regulation, it shall file an application with the Board of Zoning Adjustment....
 
 
 36
 22 U.S.C. Sec. 4306(c)(1). The plaintiffs take this to mean that all chancery land-use issues other than initial location must come before the DCFMA-BZA only by way of an appeal from some other body; of course, Turkey's chancery is already "located" at the Massachusetts Avenue site, and the mission is not appealing any "administrative decision" to the DCFMA-BZA.
 
 
 37
 Paragraph (c)(1), however, cannot describe the universe of cases that may come before the DCFMA-BZA. For paragraph (c)(3) of Sec. 206 speaks of DCFMA-BZA determinations "concerning the location, replacement, or expansion of a chancery" and provides that such decisions "shall not be subject to the administrative proceedings of any other agency or official except as provided in this chapter." 22 U.S.C. Sec. 4306(c)(3). The only way to give effective operation to both of these provisions is to conclude that the term "location" in paragraph (c)(1) includes the "replacement" and "expansion" determinations referred to in paragraph (c)(3), and that zoning issues that do not involve "location, replacement, or expansion," i.e., those not covered by paragraph (c)(3), are to be raised first before the appropriate D.C. authority and then brought to the DCFMA-BZA on appeal pursuant to paragraph (c)(1).
 
 
 38
 If paragraph (c)(1) allowed the DCFMA-BZA to review only zoning decisions of some other agency (at least when the matter is not one of "location"), then the reference in paragraph (c)(3) to replacement and expansion determinations not subject to the proceedings of any other agency would be meaningless. Rather, we must conclude that paragraph (c)(3) gives the DCFMA-BZA exclusive original jurisdiction over zoning determinations governing the "location, replacement, or expansion" of a chancery; as to all other zoning issues relating to a chancery, DCFMA-BZA has exclusive appellate jurisdiction under subsection (c)(1). Replacement and perhaps expansion are clearly at issue in this case, and Turkey's proposal was therefore properly before the DCFMA-BZA in the first instance.
 
 
 39
 The District of Columbia Court of Appeals would agree. In Embassy of the People's Republic of Benin v. District of Columbia Board of Zoning Adjustment, 534 A.2d 310 (D.C.App.1987), the D.C. Zoning Board had denied a foreign mission's application to construct a radio antenna at its chancery facility. Id. at 311. On appeal, the court concluded that the FMA gives the DCFMA-BZA exclusive jurisdiction over such determinations, stating: "The language of the FMA leaves little doubt that Congress wished to create a comprehensive scheme for the fair and expeditious decision of issues relating to foreign chanceries in the District of Columbia." Id. at 316. The court specifically rejected "the contention ... that Congress, in enacting the FMA, intended to create two independent and parallel schemes, one federal and one local, for resolution of chancery issues." Id. at 319.
 
 
 40
 Finally, the plaintiffs argue that the FMA does not preempt applicable local law, and that Turkey is still required to comply with the procedures of District of Columbia zoning law. Both the FMA and local law, however, strongly suggest the contrary. Section 207 of the FMA, 22 U.S.C. Sec. 4307, provides: "Nothing in section 4302, 4303, 4304, or 4305 of this title may be construed to preempt any State or municipal law of governmental authority regarding zoning, land use, health, safety, or welfare...." Glaringly absent from this provision is any reference to Sec. 206, 22 U.S.C. Sec. 4306, which, of course, implies that Sec. 206 "may be construed to preempt" D.C. zoning and kindred laws. Likewise, Sec. 206 provides that the Secretary shall require missions to comply substantially with D.C. "building and related codes," 22 U.S.C. Sec. 4306(g); and D.C. law provides a comprehensive scheme for the HPRB to review applications submitted to the DCFMA-BZA, see, e.g., 11 D.C.M.R. Sec. 1002.7. Both of these requirements would be wholly redundant if proposals such as Turkey's were subject to the usual processes for making D.C. zoning determinations. Accordingly, we affirm the district court's conclusion that Turkey's application was properly submitted to the DCFMA-BZA, rather than to whatever local body would have been appropriate but for the FMA.
 
 C. The DCFMA-BZA's compliance with the FMA
 
 41
 The plaintiffs argue that if the DCFMA-BZA had jurisdiction over Turkey's proposal, then it did not "substantially comply" with D.C. and federal law concerning historic preservation, as required by FMA Sec. 206(d)(2). They therefore support the district court's conclusion that the DCFMA-BZA was required to submit Turkey's proposal to the ACHP, and argue against the conclusion that the DCFMA-BZA satisfied the requirements of the FMA concerning local law by submitting the proposal to the HPRB and the MAHP. Conversely, the defendants challenge the district court's ruling with respect to substantial compliance with federal law and argue in support of its decision with respect to local law.
 
 
 42
 The FMA requires the DCFMA-BZA to consider six factors in making a determination under Sec. 206. One of these factors is:
 
 
 43
 Historic preservation, as determined by the [DCFMA-BZA] in carrying out this section; and in order to ensure compatibility with historic landmarks and districts, substantial compliance with District of Columbia and Federal regulations governing historic preservation shall be required with respect to new construction and to demolition of or alteration to historic landmarks.
 
 
 44
 22 U.S.C. Sec. 4306(d)(2). The district court concluded that under this provision, "the DCFMA-BZA was required to comply substantially with the NHPA and [D.C.Law 2-144]." NTHP I, 834 F.Supp. at 452. Although the statute speaks in the passive voice and thus fails to state clearly who or what must substantially comply with the applicable regulations, we believe it is the project, not the Board. In practice, however, this determination does not advance the issue very far, because "compliance" with these laws, in this case at least, is not as much a matter of meeting any specific standard as it is of submitting the proposal to the appropriate regulatory body or bodies for review and comment. Thus, the plaintiffs argue that the proposal had to be reviewed--at some point--by the MAHP and the ACHP; the defendants argue that referral to the HPRB fully satisfied the requirements of the statute.
 
 1. Compliance with D.C. regulations
 
 45
 We do not reach the question whether anyone was required to submit the proposal to the MAHP, because the DCFMA-BZA in fact referred Turkey's plan to the MAHP. The plaintiffs' argument therefore reduces to an assertion that the DCFMA-BZA was required to wait for a determination by the MAHP before approving Turkey's proposal.
 
 
 46
 The FMA requires the DCFMA-BZA to make a final determination on a chancery proposal within six months of receiving an application. 22 U.S.C. Sec. 4306(c)(3). The DCFMA-BZA received Turkey's application on September 18, 1990 and referred it to the MAHP promptly on September 26. On March 15, 1991, only a few days before the six months had run, the DCFMA-BZA made its decision without having heard back from the MAHP. Nor is there any indication in the record that the MAHP was about to respond. For the DCFMA-BZA to have waited upon the MAHP would have been inconsistent with its statutory timetable and would have imported into the process just the sort of indeterminate delay that the FMA was meant to keep out of the process for approving chancery improvements. See H.R.Conf.Rep. No. 693 at 41 (seeking to establish "an expeditious process which will avoid ... extensive and overlapping proceedings").
 
 2. Compliance with federal regulations
 
 47
 The issue of substantial compliance with federal regulations is more complex. The DCFMA-BZA, though established concurrently in federal and District of Columbia law, is a local, not a federal, body. See NTHP I, 834 F.Supp. at 451. Section 206 of the FMA requires the DCFMA-BZA to consider historic preservation "as determined by the Board ... in carrying out this section." 22 U.S.C. Sec. 4306(d)(2). As noted above, the FMA requires the DCFMA-BZA to consider only whether an applicant has substantially, not strictly, complied with federal historic preservation regulations. One searches in vain, however, for any substantive federal regulations with which Turkey's project could be in or out of "substantial compliance." See 36 C.F.R. parts 61 and 800. In fact, the only relevant historic preservation requirement is in a statute, not a regulation, and is procedural: under Sec. 106 of the NHPA a federal agency must first refer to the ACHP for advice any project it proposes to fund or to license.
 
 
 48
 Consequently, the plaintiffs argue, and the district court agreed, that the DCFMA-BZA should have submitted Turkey's proposal to the ACHP. While they have not raised any substantive challenge to the DCFMA-BZA's determination that "the existing building is of marginal architectural quality and that the historic preservation criterion has been satisfied," they suggest that the procedure for resolving a difference between a federal agency and the ACHP, see 36 C.F.R. part 800, could bring about a more appropriate resolution of their dispute with the DCFMA-BZA. As the plaintiffs acknowledge, however, an agency need not heed any advice it receives from the ACHP.
 
 
 49
 There is no indication in any statute or regulation that the federal dispute-resolution process would be applicable were the ACHP to receive a referral from a local rather than a federal agency. The NHPA contemplates that the ACHP will review the "policies and programs of Federal agencies," whereas no provision is made for the ACHP to review the individual determinations of a local body. 16 U.S.C. Sec. 470j(a)(6). On the contrary, the NHPA contemplates that the states will create, and the ACHP will approve, state programs responsible for "carrying out the purposes of the [NHPA]" at the local level. 36 C.F.R. Sec. 61.2(b). (The District of Columbia is considered a state for purposes of these regulations. See 36 C.F.R. Sec. 61.2(o)).
 
 
 50
 In view of the state-federal relationship sketched in the NHPA, the defendants argue that whatever "substantial compliance" requires when there are no substantive federal standards with which to comply, it was sufficient for the DCFMA-BZA to submit Turkey's proposal to the HPRB and to consider that body's advice in making its final determination regarding the proposal. We agree.
 
 
 51
 The federal historic preservation concerns raised by Turkey's proposal were addressed to and by the HPRB, then considered by the DCFMA-BZA, in much the same way that they would have been addressed to and by the ACHP in the case of a federal agency's proposal. To require the DCFMA-BZA to submit all proposals to the ACHP would overread a statute that directs the DCFMA-BZA alone to "consider" whether there has been "substantial compliance" with federal regulations. In this case the DCFMA-BZA's referral of the matter to the HPRB brought it well within the limits of "substantial compliance," whatever the precise boundaries of that concept may be. We therefore reverse the district court's holding that the DCFMA-BZA was required to submit Turkey's proposal to the ACHP for review.
 
 III. Conclusion
 
 52
 The Secretary of State's failure to disapprove Turkey's chancery proposal under Sec. 205 of the FMA did not render the project a federally licensed undertaking for purposes of Sec. 106 of the NHPA. Turkey's application was properly submitted to the DCFMA-BZA, and the DCFMA-BZA complied with Sec. 206(d)(2) of the FMA by submitting Turkey's proposal to the MAHP and the HPRB. Accordingly, we affirm the district court's judgment in all respects but one; we reverse that judgment insofar as it requires the DCFMA-BZA to submit Turkey's proposal to the ACHP in order to comply with Sec. 206(d)(2) of the FMA.
 
 
 53
 So ordered.
 
 
 
 *
 Section 106 of the NHPA, 16 U.S.C. Sec. 470f, provides:
 The head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State and the head of any Federal department or independent agency having authority to license any undertaking shall, prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license, as the case may be, take into account the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register. The head of any such Federal agency shall afford the [ACHP] a reasonable opportunity to comment with regard to such undertaking.